The Bank of Pittsburgh, Plaintiff in Error, *v.* John S. Neal and Reuben E. Neal.

A commercial house sent to a correspondent eight bills of exchange, four purporting to be the first and the other four the second of exchange, and the whole eight accepted on their face by that commercial house, and each of the four made payable to the order of their correspondent, but in blank as to the names of the drawers, and the address of the drawees, and as to date and amount and time and place of payment.

The correspondent filled up and had discounted the four which were the first of exchange, which were not involved in the present suit.

Two of the four of the second of exchange were filled up, varying from the others, not only in dates and amounts, but also as to time and place of payment.

These bills were discounted by a bank without any knowledge whatever that either had been perfected and filled up by the prayee without authority, or of the circumstances under which they had been intrusted to his care, unless the words " second of exchange, first unpaid," can be held to have that import.

The effect of these words was a question of law, and not of fact for the jury.

The bills described above were not parts of sets of bills of exchange. They were perfected, filled up, and negotiated, by the correspondent of the defendants, to whom the blank acceptances had been intrusted as single bills of exchange; and for the acts of their correspondent, in that behalf, the defendants are responsible to a bona fide holder for value, without notice that the acts were performed without authority.

The case falls within the rule, that where one of two innocent parties must suffer, through the fraud or negligence of a third party, the loss shall fall upon him who gave the credit.

THIS case was brought up by writ of error from the Circuit Court of the United States for the district of Indiana.

It was an action brought by the bank upon two bills of exchange, one dated on the 18th of August, 1857, at Pittsburgh, drawn by L. O. Reynolds & Son upon J. S. & R. E. Neal, at Madison, Indiana, requesting them to pay, four months after date of this second of exchange, (first unpaid,) to the order of L. O. Reynolds, at the Ohio Life Insurance and Trust Company, at Cincinnati, in the State of Ohio, two thousand one hundred and sixty-eight dollars. Reynolds endorsed this bill to L. Wilmarth & Co., who endorsed it to the bank. The bill was accepted by J. S. & R. E. Neal.

The other bill sued upon was similar in all its circumstances, except that it was dated on the 1st of August, 1857, payable four months after the date of this second of exchange, (first unpaid,) for thirteen hundred and fifty dollars. It was endorsed and accepted like the other.

In order to present a distinct view of the transactions which led to this suit and the nature of the defence, it seems necessary to state particularly all the bills mentioned in the proceedings, designating each bill by a letter, which is the reporter's mark, and used for easy reference.

In June, 1857, J. S. & R. E. Neal, residents of Madison,

Indiana, for the purpose of raising money, delivered to L. O. Reynolds, of Pittsburgh, the four following bills, viz:

Exchange for $———.

——— after ——— of this first of exchange, (second unpaid,) pay to the order of L. O. Reynolds ——— dollars, value received, without any relief from valuation or appraisement laws.

To ———.

Accepted: J. S. & R. E. NEAL.

(This bill we will call A.)

Exchange for $———.

——— after ——— of this first of exchange, (second unpaid,) pay to the order of L. O. Reynolds ——— dollars, value received, without any relief from valuation or appraisement laws.

To ———.

Accepted: J. S. & R. E. NEAL.

(This bill we will call B.)

Exchange for $———.

——— after ——— of this second of exchange, (first unpaid,) pay to the order of L. O. Reynolds ——— dollars, value received, without any relief from valuation or appraisement laws.

To ———.

Accepted: J. S. & R. E. NEAL.

(This bill we will call C.)

Exchange for $———.

———· after ——— of this second of exchange, (first unpaid,) pay to the order of L. O. Reynolds ——— dollars, value received, without any relief from valuation or appraisement laws.

To ———.

Accepted: J. S. & R. E. NEAL.

(This bill we will call D.)

With these bills, instructions were sent to Reynolds to have them filled up for sums not less than $1,500, nor more than $3,000 each, to have them discounted at Pittsburgh, and remit the proceeds to J. S. & R. E. Neal, at Madison, Indiana.

In July, 1857, four other bills like the preceding were sent to Reynolds. These last bills were sent to Reynolds at his

request, and intended for his use, as accommodation acceptances of the Neals.

These bills we will call E, F, G, H.

A was filled up by Reynolds as follows: Date, July 1st; amount, $1,965; time, four months; drawers, L. O. Reynolds & Son; drawees, J. S. & R. E. Neal. Thus filled up, it was negotiated by Reynolds to the Mechanics' Bank of Pittsburgh. Reynolds failed to remit the proceeds according to instructions. When the paper matured, the defendants, as acceptors, paid it.

B was filled up as follows: Date, July 10th; time, four months; amount, $2,035; drawers, L. O. Reynolds & Son; drawees, J. S. & R. E. Neal. Thus filled up, it was negotiated by Reynolds to the Merchants and Manufacturers' Bank of Pittsburgh. The proceeds of this bill were remitted by Reynolds to the defendants. Before the commencement of this suit, the Merchants and Manufacturers' Bank, as holder and owner of the bill, recovered judgment on it against the acceptor in the Jefferson Circuit Court of the State of Indiana. C and D were for the present retained by Reynolds in his own possession.

E, being similar to A, was filled up as follows: Date, July 30th; time, four months; amount, $2,450; drawers, L. O. Reynolds & Son; drawees, J. S. & R. E. Neal. Thus filled up, it was negotiated by Reynolds to the Merchants and Manufacturers' Bank of Pittsburgh, Reynolds retaining the proceeds. The holders of this bill brought suit against the defendants, as acceptors, in the Jefferson Circuit Court, Indiana, which action was still pending when the pleas in this case were filed.

F, being similar to B, was filled up by Reynolds as follows: Date, July 24th; time, four months; amount, $2,750; drawers, L. O. Reynolds & Son; drawees, J. S. & R. E. Neal. Thus filled up, it was negotiated by Reynolds to the Citizens' Bank of Pittsburgh, Reynolds retaining the proceeds. John Black & Co. became the holders, and after its maturity, and before the commencement of this suit, they recovered judgment against the acceptors of the bill for its full amount in the Jefferson Circuit Court of Indiana.

Thus the bills A, B, E, F, being the first of exchange, (second unpaid,) are accounted for. What became of G and Ӊ, the record did not show. Let us now account for C and D.

C was filled up as follows: Date, August 1st; time, four months; amount, $1,350; drawers and drawees, as above.

D was filled up as follows: Date, August 18th; time, four months; amount, $2,168; same drawers and drawees. These bills were both negotiated to the Bank of Pittsburgh, and were the ones sued on in this case. It will be observed that they were both second of exchange, (first unpaid,) and that the sums of money did not correspond in amount with any of those for which the first of exchange had been filled up, nor in date, time, or place of payment.

There were four counts in the declaration, and eight pleas, which were all demurred to except the plea of the general issue. It is not necessary to state these pleadings, because they were only intended to raise the questions of law which arise from the statement of facts given above. The court overruled the plaintiffs' demurrers, so that judgment went for the defendant; and upon this ruling upon the demurrers, the case was brought up by the plaintiff to this court.

It was argued by *Mr. Stanton*, upon a brief filed by himself and *Mr. Walker*, for the plaintiff in error, and by *Mr. Thompson*, upon a brief filed by himself and *Mr. Dunn*, for the defendants.

*Mr. Stanton's* points were the following:

1. That *the acceptance* of the bills held by the bank for value, binds the acceptors. Whether the bills held by the bank were seconds, or any other number, in any real or imaginary series of bills, *they were accepted,* and the acceptors bound themselves thereby to pay the holder the sum therein specified. If the acceptor meant to be bound only on one of the set, he should have *accepted* that one. The holder was not bound to make any inquiry or take any notice of the others.

16 Peters, 205.

Chitty on Bills, 155.

Holdsworth *v.* Hunter, 10 B. and C., **444.**

Story on Bills, sec. 226.

Byles on Bills, 293, 294.

2. The words "second of exchange, first unpaid," were directions given by the drawer to the acceptors, to notify them of the series, and put the acceptors on their guard as to the extent of acceptance. But their own *acceptance* constitutes the contract of the acceptors, and by it they bound themselves to pay the holder of that identical paper the sum specified therein.

Wells *v.* Whitehead, 15 Wend., 527.

Downes *v.* Church, 13 Peters, 205.

"The bona fide holder of any one of the set, *if accepted,* might recover the amount of the acceptor."

Story on Bills, sec. 226.

Byles on Bills, 310.

Chitty on Bills, 155.

Holdsworth *v.* Hunter, 10 B. and C., **444.**

3. There were no *firsts* of the bills held by the Bank of Pittsburgh. The agent to whom they were delivered in blank made a distinct bill of each blank; and each being accepted, the acceptors are chargeable to any bona fide holder in whose possession they might come.

The counsel for the defendant in error contended, in the first place, that this bill ought to be denominated a forgery, or at least a fraud, on defendants, falling short of the crime of forgery; and that the plaintiff could not claim the benefit of the rule which estopped the defendant from denying the bill for this reason: that the act of the party giving the credit must be such as is reasonably calculated to deceive—that the party claiming the protection of this principle must, himself, have acted with reasonable circumspection, and must have been subjected to the loss, notwithstanding the use of such reasonable circumspection.

The principle in question is, we think, accurately expressed in a recent case in the English Exchequer, Baker *v.* Sterne, 25 E. L. and E., 502. Pollock, C. B., citing and illustrating this same case of Young *v.* Grote, says: "I should myself prefer to

put it thus: that where a man issues a document of that sort, (a bill of exchange or check,) which may be so filled up, the authority is to be judged of, as far as the bulk of mankind is concerned, by that paper itself, and not by some other private instruction. It may, however, be ranged with a class of cases perfectly familiar, which we all know to be applicable to a great many other subjects as well as bills of exchange, namely: that where one man by his negligence has enabled another to practice a fraud on a third party, which the third party has no means of defeating whatever, the consequence of that must be visited upon the individual who enables the other to practice the fraud."

The same principle, designated as estoppel *eo nomine*, is defined as follows, by Lord Denman, in Pickard *v.* Sears, 6 Ad. and Ell., 469; S. C., 33; E. C. L., 115: "The rule of law is clear, that where one by his words or conduct wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." This language was not used with any special reference to commercial paper. It is merely quoted as comprising the elements of an estoppel *in pais*, as that doctrine has grown up, in modern jurisprudence, under the influence of equity.

In 2 Smith's Leading Cases, 4 Am. ed., Hare *v.* Wallace, 571, the editors, in speaking of the fact that an acceptor is estopped to deny the genuineness of the bill as originally drawn, say that this estoppel "is marked by much of the naked severity of circumstance and application which marked estoppels at common law." We cannot, however, see any peculiarity that distinguishes this, in principle, from other cases of estoppel *in pais*, or why it should be said to be marked with "naked severity." The drawee is reasonably presumed to know the handwriting of the drawer, who is his immediate correspondent. He should not pay the bill without being satisfied that it is genuine. If he does pay, and the draft proves a forgery, he is guilty of negligence, and for that reason the law will not grant him recovery.

He should not accept, without being satisfied that the drawer is competent to draw, and that his signature is genuine. By the act of accepting, he admits these things. Between a casual purchaser, in market, of the bill, and the drawer, there is no privity. They are probably strangers to each other, and in case of a foreign bill, residents of different States. Such purchaser, then, may reasonably act upon the faith of the admission implied in the acceptance; and as against him, the acceptor should not be allowed to say that the draft was forged. But this reason would cease in cases where the holder is privy to the fraud, or affected with notice of it, and in such case there is no estoppel.

Bank of Commerce *v.* Union Bank, 3 Coms.. 230.

Such estoppel, then, falls plainly within the ordinary principle of estoppels *in pais*, without resorting to any supposed peculiarity of the commercial law.

We submit, then, as a clear deduction from the authorities, that if the officers of the Bank of Pittsburgh, in purchasing this paper, failed to use ordinary and reasonable prudence, and if the paper, as intrusted by the defendants to Reynolds, was not in such condition or of such kind as to enable Reynolds to practice the fraud, notwithstanding the exercise of ordinary and reasonable prudence by the plaintiff, then the defendants are not concluded by their acceptance.

Let us then examine the facts of this case in the light of these principles.

(This part of the argument is necessarily omitted).

It is urged, however, that the drawee should accept but one part of a bill drawn in a set, and that that part, when so accepted, becomes the bill; that any third person seeing it has a right to presume it to be the only accepted part, and is justified in purchasing it without inquiring after the other parts; that by accepting all the parts, the drawee becomes liable as upon so many different bills.

The following authorities are cited as tending to establish this position:

Chitty on Bills, 11 Am., from 9 London ed., 155, 156

Byles on Bills, side pages 310, 311.

Story on Bills, sec. 226.

Holdsworth *v.* Hunter, supra.

Wells *v.* Whitehead, 15 Wend., 527.

Downes *v.* Church, 13 Pet., 205.

Each of the above text books contains a dictum seeming to favor the proposition, but neither of the three cases cited has any tendency to sustain it. If these dicta in the text books are to be understood as anything stronger than mere recommendation, we submit that they are unsustained by authority; that they are inconsistent with the theory of this species of commercial paper, and at variance with general commercial usage.

The counsel then examined these authorities, and concluded with the following summary :

Chitty deduces it as an inference from an untenable legal proposition; Story, rejecting the proposition, perpetuates the inference; Byles repeats it on the authority of Holdsworth *v.* Hunter, an authority that condemns it; and all of them put it as matter of recommendation and caution, rather than peremptory law.

The remaining part of the argument of the counsel for the defendant is omitted for want of room.

Mr. Justice CLIFFORD delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the district of Indiana. All of the questions presented in this case arise upon the pleadings and the facts therein disclosed. It was an action of assumpsit, brought by the plaintiff in error as the holder of two certain bills of exchange, against the defendants as the acceptors. An amendment to the declaration was filed after the suit was commenced. As now exhibited in the transcript, it contains four counts. Two of the counts were drawn up on the respective bills of exchange, and are in the usual form of declaring in suits, by the holder of a bill of exchange against the acceptor. Those contained in the amendment are special in form, setting forth the circumstances under which the respective bills of exchange were drawn, accepted, and negotiated, and averring that these

acts were subsequently ratified by the defendants. To the merits of the controversy the defendants pleaded the general issue, and filed seven special pleas in bar of the action. Demurrers were filed by the plaintiff to each of the special pleas, which were duly joined by the defendants, and after the hearing, the court overruled all of the demurrers. Those filed to the pleas responsive to the first and second counts were overruled upon the ground that the pleas were sufficient, and constituted a good bar to the action; but those filed to the fifth, sixth, seventh, and eighth pleas were overruled, upon the ground that the third and fourth counts, to which those pleas exclusively applied, were each insufficient in law to maintain the action. Whereupon, the plaintiff abiding his demurrers, the court directed that judgment be entered for the defendants, and the plaintiff sued out a writ of error, and removed the cause into this court. It being very properly admitted, by the counsel of the defendants, that the first and second counts of the declaration are in the usual form, it is not necessary to determine the question as to the sufficiency of the third and fourth, and we are the less inclined to do so, from the fact that the counsel on both sides expressed the wish, at the argument, that the decision of the cause might turn upon the question, whether the plaintiff, on the facts disclosed in the pleadings, was entitled to recover against the defendants. That question is the main one presented by the pleadings; and inasmuch as it might well have been tried under the general issue, we think it quite unnecessary to consider any of the incidental questions which do not touch the merits of the controversy. Special pleading in suits on bills of exchange and promissory notes ought not to be encouraged, except in cases where by law the defence would otherwise be excluded or rendered unavailing. Full and clear statements of the facts as disclosed in the pleadings, were presented to the court, at the argument, by the counsel on both sides. They are substantially as follows: In June, 1857, the defendants, residents of Madison, in the State of Indiana, being desirous of procuring a loan of money, made their certain accept ances in writing of two blank bills of exchange, in sets of two

parts to each bill, and transmitted the four blanks, thus accepted, to their correspondent, Lot O. Reynolds, then and still residing at Pittsburgh, in the State of Pennsylvania. Both sets of blanks were in the form of printed blanks usually kept by merchants for bills of exchange in double sets, except that each of the four was made payable to the order of the correspondent to whom they were sent, and was duly accepted on its face by the defendants, in the name of their firm. They were in blank as to the names of the drawers and the address of the drawees, and as to date, and amount, and time, and place of payment. When the defendants forwarded the acceptances, they instructed their correspondent to perfect them as bills of exchange, by procuring the signatures of the requisite parties, as accommodation drawers and endorsers, and to fill up each with the appropriate date, and with sums not less than fifteen hundred nor more than three thousand dollars, payable at the longest period practicable, and to sell and negotiate the bills as perfected, for money, and remit the proceeds to the defendants. Afterwards, in the month of July, of the same year, the defendants, at the request of the person to whom those acceptances were sent, made four other similar acceptances, and delivered them to him, to be sold and negotiated as bills of exchange, in double sets, for his own use, and with power to retain and use the proceeds thereof for his own benefit. They were in all respects the same, in point of form, as the four acceptances first named, and, like those, each of the four parts was made payable to the order of the person at whose request they were given, and was duly accepted by the defendants in the name of their firm. When they delivered the sets last named, they authorized the payee to perfect them as bills of exchange, in two parts, in reasonable amounts, and with reasonable dates. Eight acceptances were thus delivered by the defendants to the same person, corresponding in point of form to four bills of exchange, but with blanks for the names of the drawers and the address of the drawees, and for the respective amounts, dates, and times and places of payment. Four contained, in the printed form of the blanks, the words, "first of exchange, second unpaid;" and the other four contained in

the corresponding form the words, "second of exchange, first unpaid;" but in all other respects they were alike. All of the first class were perfected by the correspondent as. bills of exchange of the first part, and were sold and negotiated by him at certain other banks in the city of Pittsburgh. He perfected them by procuring L. O. Reynolds & Son to become the drawers, addressed them to the defendants, endorsed them himself in blank, and procured another individual or firm to become the second endorser. They were filled up by him for sums varying from about two thousand to three thousand dollars, with dates corresponding to the times when they were negotiated, and were respectively made payable in four months from date. Contrary to his instructions, he retained the proceeds of the one first negotiated, which he had been directed to remit; and he also retained in his possession, but without inquiry or complaint on the part of the defendants, the other four acceptances, constituting the second class. On the first day of August, 1857, he perfected and filled up as a separate bill of exchange one of the last-named acceptances, and sold and negotiated it to the plaintiff for his own use and benefit. He also perfected and filled up, on the eighteenth day of the same month, another of the same class, in the same manner, and for the same purpose, and on the same day sold and negotiated it to the plaintiff. Both of these last-mentioned bills of exchange vary from those of the first class, not only in dates and amounts, but also as to time and place of payment, and are in all respects single bills of exchange. They were each received and discounted by the plaintiff, without any knowledge whatever that either had been perfected and filled up by the payee without authority, or of the circumstances under which they had been intrusted to his care, unless the words, "second of exchange, first unpaid," can be held to have that import.

In all other respects, the bills must be viewed precisely as they would be if they had been perfected and filled up by the defendants, and for two reasons, deducible from the decisions of this court:

First. Because, where a party to a negotiable instrument

intrusts it to the custody of another with blanks not filled up, whether it be for the purpose to accommodate the person to whom it was intrusted, or to be used for his own benefit, such negotiable instrument carries on its face an implied authority to fill up the blanks and perfect the instrument; and as between such party and innocent third parties, the person to whom it was so intrusted must be deemed the agent of the party who committed such instrument to his custody—or, in other words, it is the act of the principal, and he is bound by it. Goodman *v.* Simonds, 20 How., 361; Violet *v.* Patton, 5 Cran., 142.

Secondly. Because a bona fide holder of a negotiable instrument, for a valuable consideration, without notice of the facts which impeach its validity between the antecedent parties, if he takes it under an endorsement made before the same becomes due, holds the title unaffected by these facts, and may recover thereon, although, as between the antecedent parties, the transaction may be without any legal validity. Swift *v.* Tyson, 16 Peters, 15; Goodman *v.* Simonds, 20 Howard, 363.

Applying these principles, it is obvious that the only question that arises on this branch of the case is as to the effect of the words, "second of exchange, first unpaid," which appear on the face of the bills. That question, under the circumstances of this case, is a question of law, and not of fact for the jury. Three decisions of this court sustain that proposition; and in view of that fact, we think it unnecessary to do more than refer to those decisions, without further comment in its support. Andrews *v.* Pond and al., 13 Pet., 5; Fowler *v.* Brantly, 14 Pet., 318; Goodman *v.* Simonds, 20 How., 366.

Another principle, firmly established by this court, and closely allied to the question under consideration, will serve very much to elucidate the present inquiry. In Downes and al. *v.* Church, 13 Pet., p. 207, this court held, that either of the set of bills of exchange may be presented for acceptance, and if not accepted, that a right of action presently arises, upon due notice, against all the antecedent parties to the bill, without any others of the set being presented; for, say the

court, it is by no means necessary that all the parts should be presented for acceptance before a right of action accrues to the holder.

Now, if either of the set may be presented, and when not accepted a right of action immediately ensues, it is difficult to see any reason why, if upon presentation the bill is accepted, it is not competent for the endorsee to negotiate it in the market; and clearly, if the endorsee may properly negotiate the bill, a bona fide holder for value, without notice, may acquire a good title. In this connection, Mr. Chitty says, that "unless the drawee has accepted another part of a bill, he may safely pay any part that is presented to him, and that a payment of that part will annul the effect of the others; but if one of the parts has been accepted, the payment of another unaccepted part will not liberate the acceptor from liability to pay the holder of the accepted part, and such acceptor may therefore refuse to pay the bearer of the unaccepted part;' from which he deduces the rule, that a drawee of a bill drawn in sets should only accept one of the set. Chitty on Bills, (10 Am. ed., by Barb.,) 155.

Mr. Byles says: "The drawee should accept only one part, for if two accepted parts should come into the hands of different holders, and the acceptor should pay one, it is possible that he may be obliged to pay the other part also;" which could not be, unless it was competent for the holder of a second part to negotiate it in the market. Byles on Bills, p. 310.

Where the drawee accepted and endorsed one part to a creditor, as a security, and afterwards accepted and endorsed another part for value to a third person, but subsequently substituted another security for the part first accepted, it was held, in Holdsworth v. Hunter, 10 Barn. and Cress., 449, that, under these circumstances, the holder of the part secondly accepted was entitled to recover on the bill; and Lord Tenterden and Baron Parke held that the acceptor would have been liable on the part secondly accepted, even if the first part had been endorsed and circulated unconditionally.

Judge Story says, in his work on bills of exchange, that the

bona fide holder of any one of the set, if accepted, may recover the amount from the acceptor, who would not be bound to pay any other of the set which was held by another person, although he might be the first holder.   Story on Bills, sec. 226.

No authority is cited, for the defendant, to impair the force of those already referred to; but it is not necessary to express any decided opinion upon the point at the present time. Suffice it to say, that in the absence of any authority to the contrary, we are strongly inclined to think that the correct rule is stated by Mr. Chitty, and that such is the general understanding among mercantile men.

But another answer may be given to the argument for the defendant, which is entirely conclusive against it; and that is, that the bills described in the first and second counts were not parts of sets of bills of exchange.   They were perfected, filled up, and negotiated, by the correspondent of the defendants, to whom the blank acceptances had been intrusted as single bills of exchange; and for the acts of their correspondent, in that behalf, the defendants are responsible to a bona fide holder for value, without notice that the acts were performed without authority.

When the transaction is thus viewed, as it must be in contemplation of law, it is clearly brought within the operation of the same rule as it would be if the defendant himself had improvidently accepted two bills for the same debt.   In such cases, it is held, that the acceptor is liable to pay both, in the hands of innocent holders for value.   Davidson *v.* Robertson, 3 Dow. P. C., 228.

Lord Eldon said, in that case: "Here were two bills for the same account, and supposed to be for the same sums; they who were to pay them had a right to complain that there were two, and yet they were bound to pay both, in the hands of bona fide holders, if accepted by them or by others for them, having authority to accept."

To suppose, in this case, that the words "second of exchange, first unpaid," import knowledge to the plaintiff that the bills were drawn in sets, would be to give them an effect contrary to the averments of the defendants' pleas, as well as

contrary to the admitted fact that they were not so drawn; and for those reasons the theory cannot be sustained.

In view of all the facts as disclosed in the pleadings, we think the case clearly falls within the operation of the rule generally applicable in cases of agency, that where one of two innocent parties must suffer, through the fraud or negligence of a third party, the loss shall fall upon him who gave the credit. Fitzherbert *v.* Mathen, 1 Term., 16, per Buller; Androscoggin Bank *v.* Kimball, 10 Cush., 373; Montague *v.* Perkins, 22 Eng. L. and Eq., 516.

Business men who place their signatures to blanks, suitable for negotiable bills of exchange or promissory notes, and intrust them to their correspondents, to raise money at their discretion, ought to understand the operation and effect of this rule, and not to expect that courts of justice will fail in such cases to give it due application.

According to the views of this court, the demurrers to the several pleas filed to the first and second counts of the declaration should have been sustained. Having come to that conclusion, it is unnecessary to examine the other propositions submitted on behalf of the defendants.

The judgment of the Circuit Court is therefore reversed, with costs, and the cause remanded, with directions to enter judgment for the plaintiff, as upon demurrer, on the first and second counts of the declaration.