GRONVOLD v. FEDERAL UNION SURETY CO.

(Circuit Court of Appeals, Eighth Circuit. March 7, 1914.)

No. 3980.

*(Syllabus by the Court.)*

1. BONDS (§ 20*)—NEGLIGENCE—DELIVERY OF BLANK BOND.

A maker who through confidence intrusts, or through culpable negligence permits to come, to the custody of a third party, a blank bond or promissory note, or other like instrument, which the third party completes by filling the blanks and then delivers for a purpose within the general scope and design of the instrument to an innocent obligee or purchaser who is thereby induced to change his situation to his legal injury in reliance upon the completed instrument, is thereby estopped as against such obligee or purchaser from denying that he executed and delivered the completed instrument to the obligee.

[Ed. Note.—For other cases, see Bonds, Cent. Dig. § 17; Dec. Dig. § 20.*]

2. INDEMNITY (§ 4*)—BOND—ESTOPPEL TO DENY EXECUTION.

G. signed a printed blank application and a printed blank indemnity bond to a surety company and either intrusted them to or permitted them to come to the custody of the cashier of the principal in his bond, who caused the blanks to be filled, and delivered the instruments to the surety company which, in reliance upon them, gave its bond as surety for G.'s principal on account of which it suffered a loss for which it sued G. on his bond.

*Held,* G. was estopped from denying that he executed and authorized the delivery of the completed bond to the surety company to indemnify it against losses on the bond which it executed.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 2–6; Dec. Dig. § 4.*]

In Error to the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

Action by the Federal Union Surety Company against F. T. Gronvold. Judgment for plaintiff, and defendant brings error. Affirmed.

Edward Engerud, Daniel B. Holt, and John S. Frame, all of Fargo, N. D. (A. E. Coger, of Rugby, N. D., on the brief), for plaintiff in error.

F. C. Massee, of East Grand Forks, Minn. (Arthur J. Stobbart, of St. Paul, Minn., on the brief), for defendant in error.

Before SANBORN and SMITH, Circuit Judges, and POPE, District Judge.

SANBORN, Circuit Judge. This writ of error assails a judgment against the defendant below on a bond of indemnity alleged to have been given by him to the Federal Union Surety Company, on the sole ground that the court below erred because it denied the defendant's motion to instruct the jury to return a verdict for the defendant because, as counsel for the defendant claimed, there was no substantial evidence that the bond was ever executed and delivered by the defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

I. M. McBride was the president, F. T. Gronvold, the defendant, was the vice president, and Andy Jones was the cashier of· the First National Bank of Rugby. That bank was anxious to become a depository for state funds, but could not do so without giving a bond with a surety for $10,000 to the state conditioned to hold the state harmless from any loss by reason of the failure of the bank to repay the deposits which it might receive from the state. The plaintiff made it a condition of executing such a bond as surety for the bank that the bank should give a bond to it with sureties satisfactory to it for the same amount conditioned to indemnify it against all loss that might result to it by reason of its execution of the bond to the state. Thereupon the bank delivered to the surety company an application for its execution as surety of the bank's bond to the state which contained a covenant of indemnity and an oath of the value of his property each purporting to be signed by the defendant, F. T. Gronvold. At the same time the bank delivered to the surety company a bond conditioned to indemnify it against any loss on account of its execution of the bond to the state. This indemnity bond purported to be signed and executed by the bank by ·F. T. Gronvold and I. M. McBride. The application and the indemnity bond bore the date of December 30, 1907, were fair on their faces, disclosed no defect or defense, and in reliance upon them the surety company on January 7, 1908, executed its bond to the state as surety for the bank. Subsequently the bank defaulted, the state se-· cured a judgment against the surety company on its bond, which the latter paid, and this is a suit by the surety company to recover of Gronvold the amount it thus lost on the indemnity agreements to which his name appeared to be attached. The sole issue was : Did Gronvold sign and deliver the application and the bond to the surety company?

H. J. Sannan testified that he had been assistant cashier of the bank for a part of four years just preceding December 30, 1907, while Gronvold had been a depositor with the bank, that he had received and cashed many checks drawn by Gronvold, had examined and become familiar with his signature, that he knew it when he saw it, that the two signatures on the application, one to the covenant of indemnity and the other to the value of his property, were the genuine signatures of Gronvold, and that the signature of F. T. Gronvold on the bond of indemnity was also his genuine signature. He also testified that on December 30, 1907, after he had ceased his services with the bank, he was called to it by Andy Jones, the cashier, who presented to him the printed application which bore the two signatures of Gronvold and requested him to fill the blanks therein, which he did, that at the same time Jones presented to him the printed bond which bore the signatures of Gronvold and McBride, and requested him to fill the blanks in and complete that instrument, that he did so, and that at the same time Jones executed it on behalf of the bank, as its cashier. The blanks which were filled by Sannan consisted chiefly of places for names and amounts. Gronvold testified that he had signed other bonds for the bank, one to the state for the safe-keeping of its deposits and one for the safe-keeping of deposits of funds of the county. When shown the application and the two signatures F. T. Gronvold upon it, he testified:

"Those signatures look like my signature, but I never signed any application for indemnity for the Federal Union Surety Company. * * * I had never to my knowledge ever signed an instrument in blank for that company." When shown the bond and the signature F. T. Gronvold thereon he testified:

"It looks some like my signature. If it were not for the fact that I know I never knowingly signed such a document, I would have to say it looks so much like my signature it might be my signature. * * *"

He testified that he refused a request of Jones, the cashier, to sign some indemnity bond before Christmas, and he finally testified:

"I have never signed Exhibit B (the bond). I do not know if Exhibit B was the document he showed to me. He showed me an application there, a surety company application, and wanted me to sign. That is the only recollection I have of the surety company's bond, and after reading that over I told him I would not sign it."

The question for determination in this court is not the preponderance or the sufficiency of the evidence; it is whether or not there was any substantial evidence to sustain a finding of the jury that Gronvold executed and delivered the application and the bond. The testimony of Sannan is clear, direct, and unimpeached that Gronvold's signatures on these instruments were genuine and that the printed instruments were in the possession of Andy Jones, the cashier of the bank, with the blanks for the names and amounts unfilled on December 30, 1907, and Gronvold's testimony indicates that Jones was the officer who attended to the business of procuring necessary bonds for that institution. Here is substantial evidence to sustain the finding of the jury that Gronvold signed the printed blank application and the printed blank bond and that they were in the custody of the cashier of the bank, the officer who attended to procuring bonds for the bank on December 30, 1907, when they bear date. The jury was therefore warranted in finding, and it undoubtedly did find, those facts, and in the further discussion of this case they must be taken as established. This conclusion, together with the blank instruments themselves, presents substantial evidence not only that he signed them, but that he signed them for the purpose of indemnifying the surety company against losses on its bond and to induce it to execute its bond, and that he knew, or was estopped by his acts and omissions from denying that he knew, that it was the Federal Union Surety Company and no other that was to be indemnified thereby and induced to execute its bond. The printed application contained just above Gronvold's first signature the following covenant without any blank whatever in it:

"In consideration of the Federal Union Surety Company executing the bond for which the above-named applicant has applied, or any other bonds for which said applicant may hereafter apply, I hereby covenant and agree to indemnify and keep indemnified said company from and against any and all loss, cost, damages and expenses of every kind and nature which may be sustained or incurred by said company by reason or in consequence of the execution of any of said bonds."

The printed bond, omitting all writing inserted in the blanks, contained the following:

"This agreement witnesseth: That whereas, we, the undersigned, have requested the Federal Union Surety Company, a corporation organized under the laws of the state of Indiana (hereinafter called the company) to sign and execute a certain bond or undertaking, * * * reference to which is hereby made for the purpose of certainty, and a copy of which instrument is or may be hereto attached; and whereas, the company has signed and executed, or is about to sign and execute the said instrument upon condition of the execution and delivery hereof, and upon the security and indemnity hereby and herein provided: ·

"Now, therefore, in consideration of the execution of said bond, and the sum of one dollar in hand paid to us by the company, the receipt whereof is hereby acknowledged, we, the undersigned, hereby covenant and agree with the company, its successors and assigns, in manner following: * * * That we will at all times indemnify and keep indemnified the company, and hold and save it harmless from and against any and all demands, liabilities and expenses of whatsoever kind or nature including counsel and attorney's fees, which it shall at any time sustain or incur by reason or in consequence of having executed the said instrument; and that we will pay over, reimburse and make good to the company, its successors and assigns, all sums and amounts of money which the company or its representatives shall pay or cause to be paid, or become liable to pay, under its obligation upon said instrument, or as charges and expenses of whatsoever kind or nature, including counsel and attorney's fees, by reason of the execution thereof, or in connection with any litigation, investigation or other matters connected therewith; such payment to be made to the company as soon as it shall have become liable therefor, whether or not it shall have paid out said sum or any part thereof."

It was the duty of Gronvold to read the blank instruments which he signed and either placed or permitted to be placed in the custody of the cashier of the bank, for the printing in these blank instruments thus signed specified the plaintiff by its name and were clearly calculated to induce action by it. If he read these instruments he knew that they contained covenants to indemnify the Federal Union Surety Company by name against any loss it might incur by executing any bond that might be specified therein after the blanks were filled, and if he did not read them he was guilty of such culpable negligence that against the innocent obligee in these instruments who has been induced thereby to sign the bond of the bank as surety and to suffer the losses for which it sues, he is estopped from denying what he must have learned if he had read them. Glenn & Pryce v. Statler, 42 Iowa, 107, 110.

[1] It is a settled and salutary rule of law that a maker who through confidence intrusts, or through culpable negligence permits to go, to the custody of a third party a blank bond or promissory note, or other like instrument, which the third party completes by filling the blanks and then delivers for a purpose within the general scope and design of the instrument to an innocent obligee or purchaser, who is thereby induced to change his situation to his legal injury in reliance upon the completed instrument, is thereby estopped as against such obligee or purchaser from denying that he executed and delivered the completed instrument to the obligee or purchaser. Angel v. N. W. Mutual Life Ins. Co., 92 U. S. 330, 339, 23 L. Ed. 556; Pence v. Arbuckle, 22 Minn. 417, 421; Burson v. Huntington, 21 Mich. 415, 432, 434, 435, 4 Am. Rep. 497; Van Duzer v. Howe, 21 N. Y. 531, 535, 536; Dair v. United States, 16 Wall. (83 U. S.) 1, 4,

5, 21 L. Ed. 491; Bank of Pittsburgh v. Neal, 22 How. (63 U. S.) 96, 107, 108; Davidson v. Lanier, 4 Wall. (71 U. S.) 447, 457, 18 L. Ed. 377; Ingham v. Primrose, 7 C. B. (N. S.) 82; Schultz v. Astley, 2 Bing. (N. C.) 544, 29 English Common Law, 414; First Nat. Bank of Wilkesbarre v. Barnum (D. C.) 160 Fed. 245, 250; Violett v. Patton, 5 Cranch, 142, 3 L. Ed. 61; Russel v. Langstaffe, 2 Doug. 514; Montague v. Perkins, 22 Eng. Law and Equity Reports, 516; Putnam v. Sullivan, 4 Mass. 45, 3 Am. Dec. 206; Mauran v. Lamb, 7 Cow. (N. Y.) 174.

[2] The general scope and design of the application and the bond appeared from their printed parts when Gronvold signed them. It was to indemnify the Federal Union Surety Company, which was specifically named therein, against loss on a bond or bonds to be described in writing in the blanks in the instruments or by the bond attached thereto, and after these instruments were completed they were delivered for a purpose within their scope and design. The facts that Gronvold signed them, that he had signed other bonds for the bank, that this blank bond was signed by McBride, the president, and by Gronvold, the vice president, of the bank and was in the possession of the cashier who gave attention to the procuring of the bonds for the bank, constitute substantial evidence to sustain the jury in finding that the bond and the application which accompanied it were intrusted to the cashier by Gronvold with authority to fill the blanks and deliver them to the surety company, and, even if he did not so intrust these instruments to the cashier, nevertheless they were in Gronvold's possession when he signed them, and his negligence in permitting them to go from his possession without canceling his signature in the absence of proof of their abstraction from him by theft, force, or fraud, which are never presumed, was such culpable negligence as to warrant the verdict on the ground that as against an innocent obligee in the bond he was estopped from denying that he had executed and authorized the delivery of the completed instruments.

There was therefore no error in the refusal of the court to instruct the jury for the defendant, and the judgment below must be affirmed.

SMITH, Circuit Judge, concurs in the result.