## AMERICAN CAN CO. v. GARNETT.

(Circuit Court of Appeals, Ninth Circuit.   March 13, 1922.)

No. 3742.

1. Contracts ⬅︎187(1)—Persons for whose benefit, in part, contract was made held entitled to enforce it.

Defendant contracted with the owner of an invention for an electric motor set to manufacture the motors for sale by special agents of such owner at fixed prices to be taken out of the price paid by the agents. By a supplemental contract attached, a copy of which was furnished to all agents, defendant undertook to supply them with motors on presentation of a memo from the owner which entitled them to a credit of $2 on the price of each motor and the payment of a stated sum in addition. The agents paid to the owner $2 each for such memos. *Held* that, while the agents were not formal parties to the contract, an agent who had paid to the owner $2 per motor in reliance on the supplemental undertaking, signed by defendant, and had ordered the motors from defendant and tendered the price was entitled to enforce the contract and to maintain an action for its breach.

2. Contracts ⬅︎187(1)—Persons for whose benefit, in part, contract was made, held entitled to enforce it.

The fact that defendant notified the other party to the contract of its cancellation *held* no defense to such action, where plaintiff was not notified, and continued to expend money on the faith of the contract, and even after receipt of his orders defendant excused its delay and promised to fill the same.

3. Contracts ⬅︎313(1)—Party may sue for breach on repudiation by other party.

On definite repudiation of a contract by one party, the other is not required to tender further performance, but may sue at once for its breach.

4. Contracts ⬅︎296—Held not invalidated by immaterial departures in execution.

Where defendant, having contracted to manufacture certain machines for sale by agents of the other party, prepared a supplemental contract to be furnished by such party to its agents containing blanks for insertion of the price of the machines, defendant cannot insist that the contract was invalidated because the other party filled the blanks with prices somewhat different from those named in the primary contract, where it was not prejudiced thereby.

5. Damages ⬅︎124(3)—Actual damages recoverable for breach.

Where defendant by breach of its contract prevented performance by plaintiff of a dependent contract defendant is estopped to deny that plaintiff was damaged to the extent of his actual outlay fairly incurred in preparing to carry out his own contract.

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Action at law by P. J. Garnett against the American Can Company, submitted with six other cases. Judgments for plaintiffs, and defendant brings error. Affirmed.

Horace Kent Tenney and A. D. Collins, both of Chicago, Ill., Jas. A. Williams, of Spokane, Wash. (Danson, Williams & Danson, of Spokane, Wash., and Chickering & Gregory, of San Francisco, Cal., of counsel), for plaintiff in error.

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

C. D. Randall and White & Randall, all of Spokane, Wash., for defendant in error McGoldrick.

C. E. H. Maloy, of Spokane, Wash., for defendant in error Wilson.

C. E. H. Maloy, of Spokane, Wash., for defendants in error, Rice and Wharf.

William G. Graves and Graves, Kizer & Graves, all of Spokane, Wash., for defendant in error Garnett.

Alex M. Winston and Allen, Winston & Allen, all of Spokane, Wash., for defendant in error Robinson.

Hamblen & Gilbert, of Spokane, Wash., for defendant in error Burgan.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. In this case, and six similar cases submitted with it, it is sought to review judgments rendered in the court below on trials before the court without a jury in actions at law to recover damages for breach of contract. On May 16, 1917, the Universal Appliance Corporation, claiming to own new and useful improvements in electric motor sets, entered into a contract with the American Can Company, hereinafter designated the defendant, in which the latter agreed to manufacture the motor sets, except such parts as it was required to purchase from manufacturers designated by the Appliance Corporation. The contract recited that the Appliance Corporation desired to have such motor sets manufactured and assembled for the purpose of sale through its agents, dealers, and assigns, and from the agreement it is apparent that it was the intention of the parties that there should be no sales of the motor sets, except through such agents. Under the contract the Appliance Corporation was required to pay the defendant certain sums of money to reimburse it for expenditures made by it, but the defendant was to obtain its profits for manufacturing the motor sets out of the price which it was to receive directly from the agents for motor sets to be delivered to the agents by the defendant. The contract provided that the Appliance Corporation should appoint the agents, fix the price of the motors which the agents should pay to the defendant, that the defendant should accept and fill all such orders when accompanied by a remittance of the sale price so fixed, and that the defendant should credit the Appliance Corporation with the difference between such sale price and the manufacturer's price agreed to be paid to the defendant and that the defendant was to make monthly settlements with the Appliance Corporation therefor.

[1] The principal question involved in each of these cases is whether or not the plaintiffs were entitled to maintain actions against the defendant for breach of contract. The defendant relies upon the fact that the agents were not parties to the contract. The court below held that, while the agents were not formal parties, they were, in fact, parties to the contract, and could sue the defendant for the breach thereof. If there were in the case no further obligation upon the part of the defendant than that which is expressed in the principal contract above referred to, the position of the defendant would be well taken. But attached to the principal contract is a subsidiary contract, designated

Exhibit D. Exhibit D is not primarily an agreement between the defendant and the Universal Appliance Corporation. It is, in substance, an undertaking on the part of the defendant for the benefit of the special agents of the Appliance Corporation. It is executed by the defendant as such undertaking, and it is "accepted" by the indorsement of the Appliance Corporation. It bears the caption:

"Special Dealer's Purchasing Contract. Issued to authorized Special Dealers for the Universal Appliance Corporation." •

It recites that the Appliance Corporation had furnished the defendant with certain dies and devices for manufacturing motor appliances, and certain moneys for manufacturing and assemblying costs, and that the defendant agrees to assemble, pack, and promptly ship to authorized agents of the Appliance Corporation the regular standard motor set on all orders received prior to July 18, 1920, upon the payment therefor "as herein provided." The defendant further agreed therein to furnish the regularly authorized agents the said motor sets substantially boxed and packed in good order for shipment—

"at and for the price of $——— per set when dealer's order is accompanied by the payment of $——— in cash, post office money order or express order and the $2 dealer's credit memo which has been regularly issued to the said dealer by the Universal Appliance Corporation."

The instrument further recites that the Universal Appliance Corporation is the sole and exclusive owner of "Duzz-All" motor and its several appliances, and that the defendant has no authority to enter into any agreement with any dealer for the purchase and sale of such motors, and is only obligated to assemble and ship the "Duzz-All" motor sets to the regularly authorized agents, dealers, or assigns of the Universal Appliance Corporation upon such orders as are hereinabove provided. "We further agree that a printed copy of this obligation may be furnished to all persons appointed in writing by the Universal Appliance Corporation." On September 5, 1919, the Appliance Corporation wrote to the defendant:

"But the next important matter for us to attend to is to build the foundation of the business, so that none of our special dealers will lose their enthusiasm through their inability to obtain goods promptly for supplying their respective wants, when they have started out to retail motor sets in the respective districts which we have allotted them in which to dispose of goods, as we guarantee them prompt deliveries under their contract with your factory and ourselves, and we want to live up to it, which, of course, can only be done by always having a fairly good reserve of motor sets on hand for them at all times."

In brief, the contract between the Universal Appliance Corporation and the defendant brought the parties thereto into a joint venture whereby each was to profit, the Appliance Corporation as the inventor of the device to be manufactured, to receive its profits, the defendant as manufacturer thereof to receive its profits, and the defendant obligated itself in writing by a separate instrument, Exhibit D, which was to be exhibited to all selling agents of the Appliance Corporation as evidence to them that the defendant bound itself promptly to manufacture and ship to such agents all motor sets ordered by them, when

accompanied with the credit memo and the price which was fixed as the amount to be received on each sale. The scheme contemplated that the agents should be men of some means, that they should enter into extensive preparations for pushing the sales of the motor sets, and that they should advance the sum of $2 to the Appliance Corporation upon each order of a motor set. The plaintiff herein advanced $10,-000 in part payment for 5,000 motors which he ordered. In addition to that he was to pay the defendant $18.50 for each motor. The $2 advance payment was provided for by Exhibit E, which is designated: "Special Dealer's Credit Memo for $2.00." It is signed by the defendant and countersigned by the Appliance Corporation, and declares that the credit memo shall be honored by the defendant as part payment for one motor set when accompanied by $———— in cash by any regularly authorized agent of the Appliance Corporation—

"subject to the contract of the Universal Appliance Corporation and American Can Company effective as of July 15, 1919, and will be valid for credit purposes only if presented to American Can Company at address above indicated prior to July 15, 1924."

The special agents were informed of the provisions of Exhibit D and the credit memo, but they had no knowledge of the provisions of the primary contract between the defendant and the Appliance Corporation. It is contended that they were charged with such knowledge by the provision above quoted, "subject to the contract of the Universal Appliance Corporation and the American Can Company," etc. But that provision can have no further effect than to refer the special agents back to Exhibit D, which was the only contract exhibited to them.

We cannot say that the court below erred in holding that the plaintiff became a party to the contract between the Appliance Corporation and the defendant. The defendant having published its offer to manufacture and ship the motor sets upon the agent's orders, and having authorized the Appliance Corporation to furnish agents with a copy of the written obligation which bound it so to manufacture and ship the motor sets, it cannot be said that the agent who acted upon such promise and expended his money thereon did not become a party to the contract so as to be entitled to sue for its breach. Ellis v. Dodge Bros., 246 Fed. 764, 159 C. C. A. 66; American Distributing Co. v. Hayes Wheel Co. (D. C.) 250 Fed. 109; Conley Camera Co. v. Multiscope & Film Co., 216 Fed. 892, 133 C. C. A. 96; Joy v. St. Louis, 138 U. S. 1, 50, 11 Sup. Ct. 243, 34 L. Ed. 843.

It is contended that there was no mutual contract between the plaintiff and the defendant: that the plaintiff assumed no obligation toward the defendant and paid it no consideration. It is true that the $2 advance payments made by the plaintiff and his assignors, evidence of which was furnished to the defendant, were solely for the benefit of the Appliance Corporation. The plaintiff, however, was not aware of that fact, and, indeed, the said advance payments, while they were received by the Appliance Corporation, were also indirectly for the benefit of the defendant, since the payments were made in pursuance of the joint venture in which the defendant was interested. Upon the part

of the defendant there was a promise to manufacture and deliver to the plaintiff motor sets at a certain specified price, and while there was not upon the part of the plaintiff a promise to receive or pay for such motor sets other than what was conveyed in the orders and the credit memos, there was a sufficient consideration in the fact of those advance payments and the plaintiff's acceptance of the defendant's offer, to sustain the plaintiff's demand against the defendant for performance and for damages for breach of contract. Hendrick v. Lindsay, 93 U. S. 143, 148, 23 L. Ed. 855. Here the plaintiff and his assignors paid $18,000 to secure the right to obtain motors from the defendant in pursuance of the provisions of Exhibit D, and there was a benefit flowing to the defendant in the profits which it must be presumed to have made upon the manufacture of the motor sets.

[2, 3] It is urged that by the notice which the defendant gave to the Appliance Corporation of the cancellation of the contract in November, 1919, an end was put to liability on the part of the defendant. But the cancellation of that contract did not affect the rights of the plaintiff. The defendant did not notify the plaintiff of such cancellation until the following February. In the defendant's testimony the reason given for the cancellation was the fact that the defendant had discovered that Mr. Hoffine, the vice president and manager of the Appliance Corporation, was a crook and was engaged in swindling people, but, said the witness, the defendant, out of courtesy to Mr. Hoffine, and in pursuance of his request, gave the agents no notice of the cancellation. It is too plain to require discussion that the defendant cannot claim a benefit from its cancellation of the contract, in view of the uncontradicted evidence that the plaintiff without such notice of cancellation, and without knowledge thereof expended large sums of money in reliance upon his understanding that the contract was still in existence, and in view of the correspondence between the plaintiff and the defendant after the date of the cancellation and during the succeeding three months, which shows that the defendant repeatedly presented to the plaintiff excuses for its delays in delivering motor sets, and made repeated promises to exercise its utmost endeavor to fill the plaintiff's orders, and never during that period denied its legal obligation to furnish the motor sets so ordered. The defendant's final and utter repudiation of its obligation to the plaintiff relieved the plaintiff from further tender of orders or purchase money and gave him an immediate right of action. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 589, 36 Sup. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580.

[4] It is contended that the special agent's contract which was exhibited to the plaintiff and his assignors, and upon which they acted differed from and was unauthorized by the provisions of the primary contract, in that the Appliance Corporation, exceeding its authority, filled the price blanks therein with a lump sum, and made no provision for the possible price increases which were authorized by the primary contract, and that the said contract was thereby avoided, and the defendant was relieved from any obligation to furnish motors at the prices so fixed. The primary contract fixed the price at $14.40 to the

defendant, subject to readjustment on January 1, 1920, and every six months thereafter, in order to meet possible changes in the cost of manufacture. In the special agent's contract exhibited to the agents the price blanks were filled in at $18.50, which included the $2 credit memo, and no provision was made for readjustment. The primary contract limited the demand upon the defendant to 2,500 motor sets per month. In the instrument which was exhibited to the agents no limitation was placed upon the number for each month. It is a fact, however, that no demand was ever made upon the defendant in excess of 2,500 in any month. The form of Exhibit D, which was the special agent's contract, was prepared under the supervision of the defendant. The defendant intrusted it to the Appliance Corporation with implied authority to perfect the same by filling in the blanks, and it cannot, as against the selling agents who acted in reliance upon the contract as it was exhibited to them, deny the authority of the Appliance Corporation so to complete the instrument. 2 C. J. 1244; Bank of Pittsburgh v. Neal, 22 How. 96, 107, 108, 16 L. Ed. 323; Angle v. N. W. Life Ins. Co., 92 U. S. 330, 390, 23 L. Ed. 556; Gronvold v. Federal Union Surety Co., 212 Fed. 908, 129 C. C. A. 428.

[5] It is said that there is no evidence to sustain the award of damages allowed by the court below. The amount of the judgment was $23,328.44. Of this $17,378 represented the credit memos which had been purchased by the plaintiff and his assignors. The remainder of the damages was for expenses incurred in preparing for and carrying out the contract. The court denied the plaintiff's claim for anticipated profits. The fact that the plaintiff failed to prove that his venture would have been profitable in case the defendant had furnished the motor sets is no defense to his demand for damages. The defendant having wrongfully put an end to the contract, and, having prevented the plaintiff from performing it, is estopped to deny that the latter is damaged to the extent of "his actual loss and outlay fairly incurred." United States v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168.

We find no error. The judgment is affirmed.