BREAUX, C. J.
Plaintiff, the Fidelity & Deposit Company of Maryland, as pledgee of a promissory note pledged by J. Dugue, secured by a mortgage and vendor’s privilege for $3,000, brought suit against the maker of the note to recover the amount of the note, interest, and fee of attorney. Plaintiff at the same time petitioned for a writ of attachment in which it charged that the defendant was disposing of her property to place it beyond the reach of her creditors. Defendant had insured the property mortgaged, with which the note referred to above was identified. The property insured was destroyed by fire.
The policies taken by defendant on the property which was destroyed amounted to about $3,700.
The insurance companies whose policies had been issued to defendant were made garnishees under the attachment, and, in answer to the interrogatories propounded to them as garnishees, admitted their indebtedness.
*883 The defendant moved to dissolve the attachment, and in her motion alleged a number of grounds, notably, prematurity; that the plaintiff was not the owner; that the note pledged was without consideration; that the grounds of the attachment were false.
There is no necessity for specially noting here the grounds upon which the defendant moved to set aside the attachment.
These grounds and other grounds will be stated by us just before deciding the ease on the merits.
The holder of a note for $2,000 intervened in the. suit, and claimed a portion of the fund seized at the instance of plaintiff, on the ground that the property covered by the policies was insured for his benefit. Plaintiff placed this intervention at issue by pleading a general denial, and by specially averring that defendant had never assumed to pay this note for $2,000; and, further, plaintiff pleaded, in substance, that defendant was a third party in so far as related to this note.
Plaintiff further denied that defendant had ever promised to take out insurance to secure the whole of the note in question, and, further, that the holder of the note had no lien or mortgage on the property.
The defendant, on the other hand, filed an answer to the intervention, and, though in the first, part of the answer she denied the intervener’s right, she subsequently, in the answer, admitted all he claimed.
Judgment was rendered for defendant for $160 damages.
It dissolved the writ of attachment, and dismissed plaintiff’s suit, and reserved to plaintiff its right of the note for $3,000, it holds in pledge.
And, as to the intervener, judgment was rendered for plaintiff, the Fidelity & Deposit Company, and against the intervener, dismissing his intervention.
All the parties, plaintiff and intervener, appeal.
The defendant virtually appeals by asking-on appeal that the judgment be amended by dismissing plaintiff’s suit, and by granting the-amount asked by her in her reconventional demand. The foregoing is a résumé of the-pleadings.
Statement of Facts.
Touching the statement of facts and the-grounds in that connection upon which plaintiff based its attachment, it appears that a small portion of defendant’s property was-sold in 1902 for the taxes of 1901. It further appears that she had directed that the proceeds of two of her policies be paid to theintervener, holder of the note before mentioned. The proceeds of the other policies-were to be expended (defendant and her-witnesses testify) to improve the property upon which were the improvements destroyed, by fire.
The evidence also disclosed that the pledgee had made ill-natured remarks regarding plaintiff’s claim; also, that the defendant under-some pretext had not met the agents of plaintiff at her home when they called to-see her in. regard to plaintiff’s claim.
The foregoing summary is of facts upon which plaintiff relies to sustain'its writ of attachment, and of facts briefly stated upon, which defendant relies.
Now, in regard to the pledge and the facts-in that connection: The act was drawn up in regular form. The note pledged was negotiable, and, -on the face of the papers, the-holder in pledge had all the rights of a pledgee.
Plaintiff, the pledgee, was represented by a member of the bar of this city, who is the-attorney and local director of the plaintiff company, and who attended to everything in-connection with this pledge. It also appears that the pledgor, some time before he executed the pledge, had a suit in which he was-represented by this attorney.
*885 . The pledgor who was indebted for different amounts, it seems, proposed to pledge the note for $3,000 to secure these amounts. The attorney effected the loan, and, on his advice,' this loan was afterward taken up by the plaintiff company, which had become interested in defendant’s business, because of the bonds it had signed for him. The plaintiff availed itself of the opportunity to have inserted in the act of pledge, that it, the pledge, would serve to secure it, plaintiff, against possible liability under the bonds and builders’ contracts which plaintiff had. signed as security for pledgor personally.
The want of consideration of the noté pledged is one of the main issues of the case. The facts relating to the mortgages and their rank are that the pledgor of the note in question to plaintiff, years before he became pledg- or; that is, in August, 1897, being owner of the property before mentioned, mortgaged it to secure the note for $2,000, and subsequently that note passed into the hands of the person who is now the intervener in this suit.
In December, 1901, plaintiff’s pledgee, Dugue, sold the property which he had mortgaged, as before mentioned, to the defendant ’ for $3,000, taking as representing the price the said note payable in three years from date of sale, secured by mortgage and vendor’s privilege. This sale by- pledgor, Dugue, to defendant, Ruth Johnston, was made in accordance with a scheme between them to raise money on the note which was very soon thereafter, pledged.
The property thereafter was kept insured by defendant, Ruth Johnston, and the policy- was made payable to the holder of the mortgage notes “as interest may appear”; and two of the policies were deposited with the holder of the note for $2,000 (intervener, as just above mentioned).
When the last renewal of the policy was made, the policies insured were placed in the hands of the pledgor’s mortgagee, Dugue, to take the place of those of the prior year which had expired.
The issue urged by plaintiff against the intervener, Jaubert, was that the intervener was not entitled to the proceeds of the policy by reason of the fact that defendant, the insured, bought the property, and had never assumed payment of this note for $2,000. In other words, that Miss Johnston was a third possessor, as relates to this note, as it had never been assumed by her, and that in addition the act of sale imported the warranty of her vendor. This is shown by the deed of sale.
A mass of testimony was taken to prove that the iDlaintiff, pledgee of Dugue (i. e., the deposit company of Maryland), knew that said note for $3,000 was executed without consideration to the knowledge of its agents, through whom all the negotiations had been conducted, as before mentioned, and it follows to the knowledge of plaintiff itself.
It is a very long story, and takes up many pages of a voluminous record.
The pledgor, to sustain the averment that the note was without consideration, states under oath, in substance, that during the time that the attorney was his attorney in other business than that involved here, that he became cognizant of all the facts, whilst the attorney is equally as positive in denying the knowledge charged. There is direct contradiction between the two. We do not propose to narrate all the facts in that connection. Our conclusion stated later after having read the facts will suffice.
Some of the statements made have a particular meaning, such as, for instance, defendant’s testimony that she found, referring to the note for $2,000, that there was a mortgage on the place some time after she had bought it in 1901, as before stated;- and that the pledgor, who by the way is her brother-in-law, and who was her factotum in all her troubles, told her that the holder of *887 the $2,000 note was threatening to foreclose, if she did not pay the interest, taxes, and insurance. He said to her that she should let him have the $3,000 note (which he says he had returned to her) ; he would thereon raise money to pay the taxes, insurance, and interest. She delivered this note to him to be pledged.
The specific charge of defendant was, as •shown by the testimony, that her brother-in-law, whom she seems to have at one time implicitly trusted, and plaintiff’s agent, the attorney before mentioned, combined and put her note in pledge with plaintiff, although it was to their knowledge that this note had no consideration.
We will here state that the pledgee was not made a party to the suit.
Opinion.
We take up in the first place for decision the question whether the attachment issued upon sufficient evidence.
It was dissolved by the decree appealed from. The grounds upon which it issued have heretofore been stated.
In accordance with the court’s order, the amounts garnished were deposited in the registry of the court. There was no objection made to the order. The plaintiff, having acquiesced in the disposition of the funds pending litigation, is scarcely in a position to urge objection to the decree dissolving the writ of attachment.
Moreover, the ground of attachment Is susceptible of two interpretations: One that fraud was, perhaps, intended; and the other that it, the property mortgaged, as .before mentioned, went to sale for taxes against all wish on defendant’s part, and that she had agreed with the adjudicatee at tax sale that she would redeem it in the near future.
The second ground, delivery of policies to a creditor, the intervener here, under the circumstances, cannot be construed as anything else than an act in good faith.
The utterances of the pledgor, another ground urged by plaintiff, cannot be considered as binding upon the defendant. It was his own threat to defeat the company, plaintiff, in its attempt to collect that which we construe was its own, and not a threat of defendant to attach new proceedings.
Another ground for the attachment was the answer sent or given at defendant’s home to plaintiff’s agents when they called to see her about plaintiff’s claim, viz., “not at home.” Their answer receives frequent sanction. It is an untruth, an inexcusable fault; but it is 'not ground for an attachment, although it will always be protested against by a person accustomed to the habitual observance of the truth.
The intention to defraud creditors by out of the way and unusual acts is not made evident. The articles authorizing the writ of attachment for cause alleged were not intended to afford a conservatory remedy in all cases in which a creditor has suspicions which are not afterwards sustained by sufficient affirmative evidence of intention to defraud.
The fraudulent intent must be shown. Abney v. Whitted, 28 La. Ann. 818; Moulor v. Rosengarden, 22 La. Ann. 531; Hoy v. Weiss, 24 La. Ann. 269; Current Law (note) vol. 1, p. 242, and note; Abel & Bach Co. v. Duffy, 106 La. 260; 30 South. 833.
The damages claimed for tying up the funds in the depository of the court is an item of damage, which, under the circumstainees, defendant has no right to recover.
We pass, from the question touching the attachment and damages claimed to the question of prematurity.
Upon this branch of the case we find that the note for $3,000 held in pledge was due. The contention of defendant is that, in accordance with the act of pledge, the note in question was extended until the date of a final judgment in a suit which the pledgor had at the time on hand.
*889 The testimony shows that the note meant was another note referred to in the act of pledge for $470.35, and not the $3,000 note.
There is therefore no merit in this plea.
This brings us to the objection of the defendant that the pledgee had no right to sue in his own name as owner and holder.
The Civil Code treats the rights of the pledgee in the property pledged as being in the nature of ownership to the amount of the pledge. It may have to yield to superior claims against it; the right, none the less, is very similar to the rights of an owner. Civ. Code arts. 3157, 3170, 3171.
From the point of view, this court has repeatedly held that the holder of the pledge has the right to sue in his name.
The right of the pledgee to sue in his name was recognized in Building Association v. Ferguson, 29 La. Ann. 548. It was recognized in the case of Lafayette v. Bruff, 33 La. Ann. 624, and reaffirmed in Chaffe v. Dubose, 36 La. Ann. 257.
The defendant had no ground to complain of on that score. She knew of the pledge. It was not concealed from her, and, on her motion for oyer, it was timely produced into court. The precedent cited has great force. It is not in any respect weakened. It in no way worked to the prejudice of defendant. There was nothing concealed, and nothing done on this score to the prejudice of the defendant.
We pass to a consideration of the defense that the note deposited in pledge was to plaintiff’s knowledge without consideration.
The whole question narrows itself down to whether the pledgee had knowledge of the asserted want of consideration.
The testimony of defendant, her allegations in court in the Cusach v. Dugue suit, and the trend of facts in the different transactions, tend to show that it was not without consideration; that it was not a simulation.
Moreover, the defendant cannot be heard to-plead her own wrongs. Even if there was-want of consideration, knowledge must be traced to plaintiff, through knowledge of its-agents.
The testimony, lengthy as it is on the subject of knowledge, is not by any means conclusive. It seeks to fasten upon plaintiffs a knowledge that would amount to bad faith, and intentional disregard -of all of defendant’s rights in the matter. The seriousness of the charge would have to be sustained by clear, positive, and direct testimony. Instead, the testimony of defendant and her witnesses-is frequently inconsistent and contradictory. It is assumed that the -agent and the attorney, who had been the attorney of defendant’s agent in other suits, not connected with this suit, must have gained knowledge of the consideration that passed, or did not pass in the sale made by defendant to her brother-in-law, in whom, at one time, at least, she seems-to have had great confidence.
Plaintiff’s agent and attorney emphatically,, as a witness, denies all such knowledge. He owns that he suspected that the sale was simulated, but he had no evidence of the-fact; and, for that reason,, he had accepted in the light it was presented to him by the-holder of the note, the brother-in-law before-referred to, by whom it was subsequently pledged.
He denies that he had knowledge of the-fact that the note had been returned by the vendor of the property to the defendant, and by her again placed in circulation by returning it to her vendor, or that he knew anything of the transactions, save those apparent on the face of the papers.
We have read, the testimony with attention, and have arrived at the conclusion that the-knowledge alleged has -not been shown by the weight of the testimony.
Alternatively defendant urges that the-pledge was given to secure three items. The- *891 first was to become due on tbe date of tbe first judgment in the Dugue-Levy suit.
There is a receipt in the transcript showing payment in full of all indebtedness of tbe latter to tbe former.
Defendant seeks to involve the second item with an asserted account between the agent personally. The claim which defendant seeks to bring into this suit has nothing to do with this suit.
These items represent amounts which plaintiffs .hold as security. If any of the claims for which plaintiff was security are prescribed, plaintiff cannot recover.
But this will have to be settled hereafter, contradictorily, between pledgee and pledgor.
The pledgor, we have already stated, is not a party here.
Intervener’s Claim.
The intervener, Jaubert, as owner of the note for $2,000 claims the amount of two of the insurance policies, deposited in the registry of the court. These policies were issued to defendant, Miss Johnston, and, through some one acting for her, were handed to the intervener, who received them in place of the old policies which had been issued on the property, and which were in possession of the intervener.
The delivery of these policies manually to the intervener did not have the effect of assigning the policy.
Policies must be assigned in writing, and are not transferable by mere delivery. That is the jurisprudence of this court, and we have found no decisions in other jurisdictions to the contrary.
Reference is made by us to this manual delivery only as evidence of the intention of the parties concerned, as going to show that it was intended by the owner to take out the policies in an amount sufficient to secure the intervener. It was understood that he was to be secured by policies of insurance.
They had been originally issued to the vendor of the property, Dugue, to. defendant. After the sale made to the defendant, at the instance of the intervener, Jaubert, the old policies that had been issued in the name of the one who sold to the defendant were canceled, new policies were issued to the defendant as the assured, and turned over — handed over — to the intervener, and the clause was added: “Payment to the holder of the mortgage notes as before mentioned.” The clause substantially reads that the amount shall be paid to the two mortgagees. The defendant, it is true, was not the mortgagor of each mortgage, only one. But it remains that there were two mortgages on the property, and that the policies were made payable to mortgagees ' with the usual clause as their interest may appear.
The insurance money, we take it, was destined to the mortgages. In case of foreclosure, she would have to pay the mortgage of the intervener or abandon the property.
But, even if the policies had been transferred to the intervener, Jaubert, as defendant urged, as they were payable to the mortgagees, plaintiff, being a mortgagee, was entitled to a proportion of the policies corresponding with his interest.
In our attempt to make this clear, we have thought on the following lines: The first
policies were issued containing the clause, “loss, if any, to be paid to holder of mortgage note.”
After C., who afterward became pledgor of the $3,000 note (second note), sold the property mortgaged to meet amount to B., the defendant A., the intervener, said to- B., the defendant, some time after her purchase: “My
mortgagor, O. [the pledgor of the subsequent note] has sold you the property. The insurance should be in your name, as you are the owner. Take the policies.issued in the name of C., have them canceled, and have other issued in your name.” This was done, and the *893 -policies were issued; and, in compliance with the last act of sale, they contained the clause: “Loss, if any, payable to holders of mortgage -notes.”
When there was one mortgage note, the ■policies were issued to protect its holders. When there were two, then they contained, 'the clause in favor of holders of mortgage motes.
From the foregoing, it follows that the -amount collected on these policies is due to ■ each of the mortgage creditors in proportion -to their respective claims ; that is, in proporción of two-fifths to three-fifths.
Intervener claims to be entitled to an •amount for attorney’s fee. We must, in our view of the law, decline to allow such an ; amount as damages. Plaintiff in intervention, under the circumstances, here presents no such demand as can be allowed for at-torney’s fee.
It is therefore ordered, adjudged, and de•■creed that the judgment of the district court, rendered in favor of defendant Ruth John-ston against plaintiff, dissolving the writ of attachment herein, is affirmed, except as to •damages allowed.
It is further ordered, adjudged, and decreed that plaintiff’s right, as pledgee of the $3,000 note, is recognized to the extent of the amount ■due it as creditor, which will hereafter be -fixed contradictorily with parties in interest.
It is further ordered, adjudged, and de•creed that the judgment in favor of defendant, and against plaintiff, in the sum of $160, -or so much as may be due from August 4, 1901, at 7 per cent, interest on $2,000 is disallowed.
It is further ordered, adjudged, and decreed that the judgment of the district court be .amended, by allowing to plaintiff judgment for the amount of its claim out of the proceeds of the policies issued to defendant other than those which were placed, at one time, in the possession of intervener, except in case there is not enough in these policies to pay plaintiff. If there is not enough, then, plaintiff and intervener shall divide the amount of policies deposited, viz., policies 1,726,762 and 1,725,761, issued by the Royal Exchange Assurance of London, England, to pay the deficiency, proportionately, to the respective claims of plaintiff and intervener.
As amended, the judgment is affirmed. Costs of appeal to be paid by 'appellees; intervener Jaubert, to recover costs of intervention in the district court.