No. 2432
Second Circuit

DUDLEY H. GRESHAM v̇. C. E. GRAVES

(December 10, 1925, Opinion and Decree.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Mortgages—Par. 98.**
Article 2645 of the Civil Code provides that the sale or transfer of a credit includes everything which is an accessory to the same, as suretyship, privileges and mortgages.

2. **Louisiana Digest—Warehouses—Par. 4, 5; Bills and Notes—Par. 125.**
The sale of a note secured by the pledge of negotiable instruments, such as warehouse receipts carried with it the transfer of the pledged instruments in the absence of an express agreement to the contrary.

Appeal from Fourth Judicial District Court of Louisiana, Parish of Union, Hon. S. D. Pearce, Judge.

This is a suit to recover from defendant the value of four bales of cotton which he alleges he had delivered to defendant. There was judgment for plaintiff for part of the claim and defendant appealed.

Judgment reversed dismissing plaintiff's suit.

Elder and Everett, of Farmerville, attorneys for plaintiff, appellee.

H. E. Dawkins, of Ruston, H. G. Fields, of Farmerville, attorneys for defendant, appellant.

ODOM, J.    Plaintiff brings this suit to recover of defendant the sum of $596.15, the value of four bales of cotton which, he alleges he had delivered to defendant, the four bales being represented by negotiable cotton warehouse tickets which he deposited with defendant as collateral security for a debt which he owed him, the tickets being numbered 12, 300, 12, 574, 13, 819, and 14, 001.

He alleges that on a date subsequent to that on which said tickets were pledged, he paid his indebtedness to defendant and demanded the return of the tickets, which was refused by defendant.

Defendant, in answer, denied receipt of the two tickets numbered 13, 819 and 14, 001, but alleged, on information and belief, that the cotton represented by said tickets was delivered to the mercantile firm of Caldwell Brothers and was sold by them and the proceeds thereof applied as a credit on an open account due by plaintiff to that firm.

But it was admitted, in answer, that the other two tickets numbered 12, 300 and 12, 574, representing each one bale of cotton, were pledged to defendant as collateral security for a debt of $137.50 which plaintiff owed him and that after said tickets were so pledged to him the plaintiff informed him that Caldwell Brothers would take up the note which plaintiff owed defendant and take over the two cotton tickets which he held as security and that Caldwell Brothers did take up said note and that he turned over to Caldwell Brothers the cotton which he held in pledge and that he had nothing further to do with said cotton.

There was judgment in the district court in favor of plaintiff for $108.61, from which judgment defendant appealed.

Plaintiff did not appeal from the judgment nor has he moved in this court that the judgment be amended.

## OPINION.

There is involved in this case both a question of fact and a question of law.

Our learned Brother of the district Court wrote an elaborate opinion on both the facts and the law involved, and while we agree with him in his final conclusion as to the facts we think he erred in his interpretation and application of the law.

On the question of fact, he held, as we understand his opinion, that in the last analysis, Graves, the defendant, held only two cotton tickets representing two bales of cotton as collateral security for the $137.50 note which the plaintiff owed him and that plaintiff had prevailed upon Caldwell Brothers to take up this note, which they did by paying the defendant the amount of the debt, and he found that when Caldwell Brothers paid defendant the amount of his debt there was nothing said about the surrender by defendant to Caldwell Brothers of the cotton tickets held as collateral along with the note which Caldwell Brothers had taken up but that defendant did surrender both tickets to them and that the proceeds of the sale of both bales of cotton represented by the tickets exceeded the amount of the debt by $108.61; and he held that the proceeds of one bale of cotton was sufficient to satisfy the debt. He held, further, that as a matter of law defendant should have surrendered to Caldwell Brothers along with the note that they took up only so much of the collateral as was necessary to pay and satisfy the note, and therein we think he erred.

The facts which it is necessary to narrate in connection with this point, are as follows:

The defendant, Graves, was during these transactions an employee of the mercantile establishment of Caldwell Brothers at Bernice, Louisiana. The plaintiff is a land owner and planter in that vicinity and had a white man named Bays and a colored man named Everett cultivating his land under the share system, half and half.

To make the crop of 1923 it was necessary that the plaintiff, the land owner, arrange for supplies not only for himself but for Bays and Everett, his tenants, also.

The defendant, its seems, had some idle capital which he used in buying notes and in furnishing supplies to farmers, making collections in the fall when cotton was gathered and marketed.

In the early part of 1923, the plaintiff arranged with defendant to advance to his tenant Bays the sum of $125.00, and on February 2nd, plaintiff and Bays executed their joint note payable to defendant for $137.50 to cover the amount to be advanced and interest thereon at 10%, the note falling due on October 1st.

The money was not actually paid by defendant to either Bays or plaintiff but it was understood that Graves, the defendant, should arrange with the mercantile establishment of Caldwell Brothers to advance to said Bays during the year supplies to the amount of $125.00 for which the defendant should be responsible and for which he actually paid.

Bays, the tenant, purchased goods and supplies from Caldwell Brothers during the year amounting to considerably more than the amount of the note.

The defendant paid Caldwell Brothers the $125.00 less a discount of 5% which Caldwell Brothers allowed him.

Just what arrangement the tenant Bays and the plaintiff made with Caldwell Brothers to supply Bays more than the amount which defendant had paid is not certain but it is shown that Bays' account at Caldwell Brothers during that year amounted to considerable more than $125.00.

The plaintiff having become responsible for the $137.50 note to defendant, in the fall of the year, after the cotton was ginned, delivered to defendant, he says, four cotton tickets representing four bales of cotton to secure said indebtedness; but the lower court found, as stated, that the defendant actually held only two tickets.

After these tickets had been delivered to defendant, plaintiff went to Caldwell Brothers and asked them to take up the note for $137.50, which they agreed to do, and plaintiff immediately told Graves, the defendant, that Caldwell Brothers would take up the note. Caldwell Brothers immediately paid Graves the amount of the note and Graves surrendered to them not only the note but the two cotton tickets as well. This was some time in the month of October. The testimony shows that plaintiff said nothing to either Caldwell Brothers or Graves as to what disposition Graves should make of the cotton tickets which he held as collateral to the note but merely told Graves that he had arranged with Caldwel Brothers to take up the note.

Caldwell Brothers, it seems, wanted the tickets along with the note and Graves says he thought he should surrender them, which he did.

The court held that it was his duty to surrender enough of the collateral to take care of the debt and no more.

All parties considered this transaction as a sale of the note by Graves to Caldwell Brothers at plaintiff's request.

Article 2645 of the Civil Code provides:

"The sale or transfer of a credit includes everything which is an accessory to the same; as suretyship, privileges and mortgages."

We find the rule stated in Daniel on Negotiable Instruments, Section 748, as follows:

"The assignment of a debt by whatever form of transfer carries with it any bill or note by which it is secured, and the transfer by endorsement or assignment of a bill or note carries with it all the securities for its payment, whether a mortgage or otherwise."

The rule is stated as follows in 4 Cyc. page 69:

"In the absence of any stipulation or provision in the contract of assignment concerning the securities or other incidents, an unqualified sale of a chose in action carries with it as incidental * * to the chose all securities held by the assignor as collateral to the claim, and all rights incidental thereto, and vests in the assignee

the equitable title to such collateral securities and incidental rights."

See also, 5 Corpus Juris, 948.

It has been repeatedly held by our Supreme Court that the sale of a note secured by a mortgage carries with it the accessory mortgage and privilege.

Perkins Bros. vs. Liquidator, 49 Ann. 653, 21 South. 743.

Succession of Forstall, 39 La. Ann. 1056, 3 South. 277.

And authorities cited.

By the same rule of reasoning the sale of a note secured by the pledge of negotiable instruments carried with it the transfer of the pledged instruments in the absence of an express agreement to the contrary.

The pledge of a chattel creates in the pledgee a species of ownership.

Fidelity & Deposit Co. vs. Johnston, 117 La. 880, 42 South. 357.

Kyle vs. Sigur, 121 La. 888, 46 South. 910.

In the case of Chaffe vs. Dubose, 36 La. Ann. 257, the court, with Chief Justice Manning as its organ, said:

"If the pledgor could control his pledges and prevent his collecting the pledge, or disposing of it after the time permitted, or restrict him in the mode of collecting it, the value and utility of this form of security would vanish."

In the case at bar, plaintiff owed defendant $137.50 evidenced by a promissory note for that amount. He pledged as security for the debt negotiable cotton instruments. Subsequent to the pledge he induced Caldwell Brothers to take up the note and informed defendant of that fact. He did not offer to pay his note and redeem the pledge. The note was not paid but was transferred by defendant to Caldwell Brothers. Thereafter, on December 18th, the plaintiff had a settlement with Caldwell Brothers and the note was marked paid by them on that date. If the plaintiff had expected or intended to redeem and regain possession of the cotton tickets he should have paid the note to defendant and demanded the delivery of the pledged tickets to him.

Under the circumstances, we hold that the transfer of the note to Caldwell Brothers carried with it the transfer of the pledge and relieved defendant of any further responsibility to plaintiff therefor.

On the question of fact as to how many bales of cotton involved in this suit was actually pledged to defendant, the testimony is conflicting.

Plaintiff brings this suit to recover four bales represented by the tickets above described. He says that these specific tickets were delivered to defendant in pledge. Defendant admits that he held tickets 12, 300 and 12, 574, but denies both in answer and in testimony that he ever had the other two tickets.

D. W. Caldwell testified that bale 13, 819 was turned over to him by Bays to secure him for his indebtedness over and above the amount advanced him by defendant. He says that Gresham turned over to him bale 14, 001 in person to hold on Gresham's debt to him and that the other two bales were turned over to Graves.

J. R. Hammock, who kept book for Caldwell Brothers, during the season of 1923, says that two of the bales of cotton in question were turned over to Caldwell Brothers. He says that Graves had a place to keep his cotton tickets and that Caldwell Brothers had another place to keep the tickets that belonged to the firm and that two of the cotton tickets involved in this case were found in Caldwell Brothers' files. He does not know who delivered them to Caldwell Brothers.

On the contrary, we have the testimony of the plaintiff that he personally delivered one of the bales in question to defendant. He delivered another bale, but admitted that he sold it. He does not claim to have delivered any more than one bale person-

ally but says he instructed Bays, his tenant, to deliver the other three bales and Bays says he did.

But as against the testimony of Bays and plaintiff we have the testimony of Caldwell that Bays delivered only one bale to him and that Gresham delivered another, and the testimony of Hammock that Caldwell held two of the tickets. Of the remaining two bales, Caldwell says that Gresham told him that if he would pay Graves $137.50 debt he should have the tickets.

We are satisfied that all four of the bales of cotton in question passed into the hands of Caldwell Brothers with plaintiff's full consent.

Plaintiff says that his cotton was put up as security for his debt and the debt of Bays. They both owed Caldwell for supplies. After Caldwell took up the note, neither Gresham nor Bays owed defendant anything and necessarily defendant had no further interest in any of the cotton. If the cotton, as plaintiff says, was put up to secure these debts, why should not Caldwell Brothers, who were the sole creditors of both plaintiff and Bays, have the cotton.

The proof is that on December 18th Bays sold his one-half interest in three bales of cotton to Caldwell. The proceeds amounted to $226.74, for which he signed a receipt. This amount was credited on his account with Caldwell Brothers. The receipt which is signed reads in part:

"For my half of three bales of cotton yard number 13,. 819, 12, 574, and 12. 300."

He admits making the settlement and signing the receipt. These are three of the bales involved in this suit. It seems that Bays considered this a sale to plaintiff, inasmuch as plaintiff was surety for the debt he owed Caldwell Brothers. The cotton was then treated as plaintiff's cotton but Bays was given credit on Caldwell Brothers' books for the proceeds of one-half thereof.

Caldwell says he purchased all four of the bales in question, treating them as plaintiff's cotton. He attaches what they refer to as a bill of sale but which is in reality only a statement showing the purchase of the cotton from D. H. Gresham. Gresham, the plaintiff, denied selling the cotton, but the witness Bays says he told Gresham to sell the cotton for the best price obtainable and credit his one-half on what he owed. He testified that Gresham exhibited to him what he called a bill of sale showing what the cotton brought, and says that he understood that the cotton was finally to go to Caldwell Brothers to pay their debts. The statement which Caldwell exhibited showing the sale of four bales of cotton by Gresham to him shows that it was the identical cotton sued for. Caldwell says he took the cotton at the request of the plaintiff and at prices suggested by him. The statement which he exhibited in court is a carbon copy of the original of which he says he delivered to plaintiff and which Bays says the plaintiff exhibited to him. Caldwell then credited plaintiff on his account with one-half of the proceeds of the three bales of cotton in which Bays was interested and with the entire proceeds of the other bale. This left a balance of $108.61 due by Caldwell Brothers to plaintiff.

It seems that defendant handled two other bales of cotton making four bales in all, but the other two bales are not involved in this suit. Defendant explained that he was surety on a mortgage note due by plaintiff to the bank and that the other two bales were sold and the proceeds applied to the payment of that debt.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed., and plaintiff's suit dismissed at his cost.