YARRUT, Judge.
On January 7, 1961 Plaintiff-Appellant brought this foreclosure suit (via ordinaria) to enforce payment of a promissory note executed by Defendants-Appellees, dated July 13, 1959, secured by mortgage on the latters’ home, for $3911.16, with 8% interest and 15'% attorney’s fee, subject to a credit of $651.82.
Defendants answered admitting execution of the note but plead want of consideration, in that they were induced to execute the note through the fraud and misrepresentation of one Sheldon D. Baum, from whom Plaintiff acquired the note; and that Plaintiff was not a holder in good faith for value before maturity. Defendants further challenged the validity of the note and mortgage on the ground they were not executed before the notary recited in the act of mortgage.
Defendants then called as third-party Defendants, Baum and his attorney and notary, and prayed for judgment over and against them for the $651.82 they paid to Plaintiff under the belief it was on account of their mortgage note issued to liquidate Eureka’s loan.
The evidence shows that one Sheldon D. Baum, a contractor, made certain improvements on Defendants’ home. Defendants obtained a loan from the Eureka Homestead Association, a local building and loan association, giving their note for $3117.41 under the Federal F.H.Á. Title I Plan to pay Baum. Eureka required Baum to endorse Defendants’ note.
Baum handled the loan for Defendants with Eureka and was paid $2500.00 for his work. Later, Baum told Defendants that Eureka could not carry the loan any longer and it was necessary for him to secure another lender to take over Eureka’s loan.
One evening (July 13, 1959) Baum, accompanied by his attorney, called at Defendants’ home with the new mortgage and note already prepared for signature. Defendants only objection was to the increase of the interest from 6% to 8%. After explanation by Baum and the attorney, they signed the mortgage and note. However, as Baum’s attorney was qualified only as a notary in Orleans Parish, he could not officially act in Jefferson Parish; hence, had the papers formally notarized by his law partner, a Jefferson Parish notary.
Baum took the note to Plaintiff, with whom he had previous business dealings, and borrowed $1800.00, for which he gave his hand note secured by Defendants’ mortgage note as collateral. Baum made only *320 a few monthly payments to Eureka to conceal his fraud from Defendants. Baum then left the City for parts unknown. When Eureka made demand upon Defendants for delinquent payments, Defendants learned for the first time of Baum’s fraud.
Plaintiff, receiving no payments from Baum on his hand note, brought suit against Baum on February 23, 1960 for $1682.16, balance due, with interest and attorney’s fee. Baum could not be found. He had decamped, being under criminal indictment and paroled under $5000.00 appearance bond.
On May 16, 1960, Plaintiff filed a supplemental petition against Baum asking for the seizure of Defendants’ pledged mortgage note under a non-resident attachment and for the appointment of a curator to represent the absent Baum. Before any further action was taken thereon, Baum voluntarily called at the office of Plaintiff’s attorney and executed a complete transfer and assignment of title to Defendants’ pledged mortgage note to Plaintiff, in return for the cancellation of his indebtedness to Plaintiff, no further consideration being paid.
In dismissing Plaintiff’s suit, the District Court gave written reasons, inter alia, as follows:
“The evidence shows that Sheldon D. Baum through fraud caused the Livac-caris to execute the promissory note and mortgage in question. After receiving the note from the Livaccaris, Baum pledged it to the plaintiff as security for his own hand note in a lesser amount. Baum was supposed to have substituted the note and mortgage in question to take the place of a previous note and mortgage held by Eureka Homestead. Subsequently the Livac-caris became aware that both mortgages were outstanding and attempted to have Baum correct the situation. After making several payments Baum, apparently as a result of other matters, fled the jurisdiction and no service has ever been made on him in this case.
“On February 23, 1960, Marx Jeffer caused a suit to be filed against Baum in the Civil District Court for the Parish of Orleans to collect the balance due on the hand note. As a result of that suit an assignment of mortgage note was passed before Irving Noviclc, Notary Public, on June 16, 1960, from Baum to the plaintiff of the Livaccari note. From that time to the present Jeffer has held the note as owner and not as pledgee.
“The Court finds that the note in question is not held by the plaintiff as a holder in due course, but is being held as owner by virtue of the assignment referred to. Because of the assignment he thus is holding the note subject to the defenses which the Livaccaris can raise against the original holder, and there is no question but that the original holder obtained the note through fraud. The plaintiff had knowledge of this by virtue of a conversation with the defendant in May 1960, before the assignment of the note. Pie, therefore, is not able to recover on this note.”
Plaintiff has appealed, and Defendants have answered the appeal to recover on their reconventional demand the $651.82 they paid Plaintiff on account of the Baum mortgage note.
Baum was then a fugitive from justice under criminal indictment, which Plaintiff should have known. Further, Plaintiff paid no further consideration for complete ownership, merely cancelling Baum’s personal indebtedness of a much lesser amount.
Plaintiff has been in the real estate and mortgage-lending business for 35 years. He had no reason to believe, when he acquired the note originally in pledge, that Baum was defrauding Defendants. Eureka’s secretary testified the Homestead had many dealings with Baum and found no irregularity in them.
*321 While we agree with the District Court that Plaintiff was in good faith when acquiring Defendants’ note in pledge from Baum; but was not in legal good faith when acquiring full ownership as assignee from Baum, for no additional consideration, we cannot agree that Plaintiff is not entitled to recover as pledgee the amount loaned to Baum, namely $1800.00, subject to a credit of $651.82 paid on account by Defendants, with interest from January 23, 1960 at 6% and 15% attorney’s fee, and court costs in this proceeding, with recognition of his mortgage on Defendants’ home not exceeding such amount. LSA-R.S. 7:27 (La. Negotiable Instruments Law); Bank of Minden & Trust Co. v. Barron, 178 La. 1023, 152 So. 746; Steeg v. Codifer, 157 La. 298, 102 So. 407; Freiler Mercantile Co. v. Chaney, 146 La. 138, 83 So. 436; Fidelity & Deposit Co. of Maryland v. Johnston, 117 La. 880, 42 So. 357; Del Bondio v. Albrecht, La.App., 181 So. 610.
The contention of Defendants that the act of mortgage and note were invalid because attested by the notary out of their presence, is not well-founded. A conventional mortgage may be contracted by an act passed in the presence of a notary and two witnesses, or by an act under private signature. LSA-C.C. Arts. 3305, 2235. Having judicially acknowledged the execution of the instruments and their signatures, Defendants are bound by their terms, subject to proof of their special defenses.
For the above and foregoing reasons, the judgment of the District Court is reversed only with respect to Plaintiff and Defendants, and judgment rendered in favor of Plaintiff and against Defendants, in solido, for $1800.00, subject to credit of $651.82, with 6% interest from January 23, 1960 until paid, and 15% attorney’s fee, and all costs in both Courts. The judgment in favor of third-party Defendants is affirmed, at the cost of third-party Plaintiffs.
Judgment reversed in part — affirmed in part — and rendered.