(51 South. 500.)

No. 17,761.

THIEL v. BUTKER et al.

(Jan. 17, 1910. Rehearing Denied Feb. 14. 1910.)

*(Syllabus by the Court.)*

1. BILLS AND NOTES (§ 350*)—PURCHASE AFTER MATURITY—RIGHTS OF HOLDER.

    Plaintiff is the holder after maturity and for value of a promissory note, executed by one of the defendants, who gave to his attorney, Maloney, money to pay the note at date of maturity. The attorney paid the note, and without authority sold it to plaintiff, who collected interest from Maloney, who also extended the time of payment for one year. When plaintiff acquired it, the note was past due, and the attorney could not give it vitality as a negotiable instrument by indorsing on it an extension of the time of payment. The note bore notice of its dishonor on its face sufficient to place any one on his guard.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 882; Dec. Dig. § 350.*]

2. BILLS AND NOTES (§ 350*)—PURCHASE AFTER MATURITY—RIGHTS OF HOLDER.

    The attorney had no authority to cut off the equities by attempting to extend the time of the note, for his authority was merely to pay the note and his acts beyond this cannot give negotiability to the instrument, already matured. The plaintiff who purchased it after maturity acquired merely the rights of a transferee, which are not greater than those of the transferror, and, as the one from whom he acquired the note had no rights against the defendants, the transferee, the plaintiff, can assert none.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 882; Dec. Dig. § 350.*]

3. BILLS AND NOTES (§ 350*)—REISSUE BY AGENT AFTER MATURITY AND PAYMENT—LIABILITY OF MAKER.

    Where a person places an amount in the hands of an attorney for the purpose of paying a note, and after so paying the attorney reissues it without authority, thereby committing a fraud, the maker cannot be held for the payment of the dishonored paper, when such maker has acted in good faith.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 882; Dec. Dig. § 350.*]

4. BILLS AND NOTES (§ 350*)—APPLICATION OF COMMERCIAL LAW.

    The principle that one who puts another in a position where he may perpetrate a wrong must suffer for the consequent loss has no application to the present case, for the strict rule of the commercial law, adopted in the interest of commerce, must prevail. The loss must fall on the one who trusted the attorney and accepted the note after maturity.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 882; Dec. Dig. § 350.*]

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by John Thiel against Henry Butker and others. Judgment for defendants, and plaintiff appeals. Affirmed.

J. Zach Spearing, for appellant. G. G. Kronenberger, for appellee Henry Butker. J. C. Henriques, for appellee A. Perfumo.

BREAUX, C. J. The plaintiff claims that he is the owner for consideration of a promissory note made by one of the defendants, bearing date November 19, 1902, to his own order and by him indorsed, for the sum of $2,000, payable in one year, identified by an act of sale and mortgage resting on property described in the petition.

The act imports confession of judgment.

One of the defendants sold this property to the other on May 4, 1906. At the date of the sale one of the defendants assumed this mortgage and interest and fee of attorney to be paid as stipulated in the act of sale.

Plaintiff sued for a writ of seizure and sale on the note and mortgage to pay note, interest, cost, and fee.

The defendant, who had assumed payment of this note at the time that he purchased the property, as before mentioned, sued for an injunction on the ground that the note had been taken up and paid by his attorney with money which he furnished on November 19, 1906.

The plaintiff in the proceedings for foreclosure (made defendant in the petition for an injunction) declared in his answer to the injunction that he in good faith acquired the note in open market.

Going back to the origin of the case, it appears that the plaintiff was informed by an acquaintance that the attorney before referred to as the attorney of one of the defendants had a $2,300 note for sale, whereupon plaintiff handed this acquaintance a check for the amount. He, the acquaintance, repaired to this attorney's office, took up this note, and handed it to plaintiff on his return.

Instead of being a $2,300 note, it was a $2,000 note, but the attorney had made his own note for the additional $300, which the acquaintance accepted subject to the approval of plaintiff.

The attorney's reputation at that time was good. The plaintiff accepted both notes, as he had no reason at that time to suspect the dishonesty of the attorney, who was also a notary public.

Plaintiff collected interest on this note from the attorney and notary, who indorsed the amount of the interest on the note and extended payment one year.

The plaintiff dealt exclusively with the attorney, and did not know the defendant Perfumo in the transaction at all save that, when the plaintiff took up the note, he was informed by the attorney that Perfumo had assumed the payment. Plaintiff knew nothing of Henry Butker (the other defendant) in this transaction. Butker was the vendor to Perfumo.

On the day that the note fell due, on November 19, 1906, it was in bank for collection for account of Robert E. Rusha.

Some one, whom neither the note clerk of the bank or any one else could identify, called at the bank, and asked that it be not stamped "Paid." The bank officer telephoned to the holder Rusha, who replied to collect the amount due, and turn over the note without the stamp "Paid."

The judge a quo took it for granted that the person calling and who paid was either Maloney or some one acting for him.

Plaintiff, Thiel, does not contest the judge's conclusion in that respect.

After Maloney or his agent had paid this amount to the bank and had taken up the note, it was reissued by Maloney for his own account. Maloney wrote to Thiel, the plaintiff, that he had examined the title of the property upon which the mortgage rested, and that he guaranteed its validity.

The evidence is that Perfumo had entire confidence in Maloney and intrusted him with the amount with which he took up the note.

Maloney's scheme in this case was to get from Perfumo, the debtor, an amount necessary to pay the note which he did not use in paying the note, but in taking it up for his own account.

At the time that Maloney took up the note for his own account it was past due, and it therefore was dishonored paper, and it was not in the power of Maloney to give it vitality as a negotiable instrument by indorsing on it an extension of time for payment. The note bore notice upon its face because of its

dishonor sufficient to place any one to whom offered on his guard.

It is true that such paper may be transferred, thought not negotiable, but those who take it without inquiry of the maker or the indorser or surety whom they propose to hold (whether the paper is good and valid) have no recourse in case it has been paid. The transferee after maturity only acquires the right of the transferror. 1 Daniel on Negotiable Instruments, p. 699.

It is subject to all the equities existing prior to the transfer.

This note for the purpose of illustration may be compared to a note after maturity that has been stolen or lost or taken up by a bankrupt who has no authority to take up a note. The transferee has no greater right than the thief, the finder or the bankrupt. They having no right, the last holder has none.

Here Maloney had no right to this note. He could transfer none to Thiel.

Very much the same principle was laid down in Weil v. Ginnery, 42 La. Ann. 492, 7 South. 622, and decisions cited therein.

It may be said further, as relates to the interest indorsed on the note, that he had no authority to receive interest and cut off the equities by attempting to grant time. His only authority was to pay the note. State ex rel. Legier v. Sutherland, 111 La. 382, 35 South. 608.

The principle that one must suffer the loss who places it in the power of the wrongdoer to commit a wrong has no application. We are governed by the strict rule of the commercial law adopted in the interest of commerce. Neither the maker nor the original payee, Butker, can be held. The latter could instruct the banker to receive the amount without indorsing or marking the note paid. The fraud committed afterward does not render him liable for a return of the amount he received.

There is no question of bad faith on the part of any one, plaintiff or defendants. If a person were to act in bad faith and render it possible to commit a wrong on a third person, then the rule would have application. But where a person in good faith places an amount in the hands of an attorney for a particular purpose, and the attorney goes entirely beyond the scope of his authority and commits a fraud by taking up a note and reissuing it without authority for which he had paid with the money he held to pay the note, this maker cannot be held as one bound for the payment of the dishonored paper. The attorney's authority was to pay the note. He had money in his hand for that purpose. He could not give it vitality by appropriating it after maturity. The loss falls upon the one who chose to trust him by accepting the past-due note from him.

It was plaintiff's misfortune to have taken the word of Maloney after maturity even to the extent of accepting his guarantee of the paper in order, it does appear, to provide against any possible defect in the title to the property on which the mortgage rested which secured the note.

The hardship is not one which we can remedy without disregarding one of the plain principles of the commercial law.

For reasons assigned the judgment is affirmed.