**(110 So. 422)**

**No. 28168.**

## HOLLINGSWORTH v. RATCLIFF et al.

(Nov. 2, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Mortgages ☞270.**

Evidence *held* not to show that holder obtained possession of note secured by mortgage by fraud and without consideration.

**2. Pledges ☞30(2).**

Pledgee of note and mortgage securing it may institute executory process and seize property.

**3. Bills and notes ☞489(1).**

Where petition did not allege that note was nonnegotiable because it was renewed subsequent to maturity, district court was without power to sustain such contention.

**4. Mortgages ☞317.**

Where note secured by mortgage was obtained from maker for use as collateral, and was so used on several occasions, it having been returned to holder's possession, she was authorized to re-issue it.

**5. Bills and notes ☞348.**

Endorsement on note secured by mortgage after maturity, reissuing and extending date of payment for one year, *held* to revive it so as to make it negotiable, as respects one taking it before the maturity so extended.

Executory process by Nathan Ratcliff and others to foreclose a mortgage, in which Lizzie L. Hollingsworth petitioned for injunction. To review judgment rejecting petitioner's demands, she applies for certiorari, prohibition, and mandamus. Rule nisi bringing up the record recalled, and writs of prohibition and mandamus denied.

Crow & Coleman, of Shreveport, for relator.

Clem V. Ratcliff and Edward Barnett, both of Shreveport, for respondents.

BRUNOT, J. Nathan Ratcliff, the pledgee of a mortgage note which was not paid at its maturity, caused executory process to issue thereon, and the property affected by the mortgage was seized and advertised for sale. The relatrix, as third opponent, petitioned the district court for a temporary injunction to restrain the sale of the property and prayed that the injunction be perpetuated, and for a judgment ordering Ratcliff to deliver to her, as the owner thereof, the note upon which the executory process was based. A rule issued directing the defendant and the sheriff to show cause why the injunction should not issue as prayed for and why the defendant should not be ordered to deliver the said note to opponent. The defendant excepted to the petition as not disclosing a right or cause of action. The exceptions were overruled, and defendants filed a joint answer in which they admit the allegations of fact in articles 1, 2, 3, and 4 of the petition, but deny all other allegations made therein. The case was tried and the judgment rejected the demands of opponent, with costs. As relatrix, opponent thereupon applied to this court for writs of certiorari, prohibition, and mandamus. A rule nisi issued, and in response thereto both defendants filed returns, and the district judge sent up the record for review.

We have reviewed the record, and we find that the only grounds alleged in the petition as reasons why the note upon which Ratcliff caused executory process to issue are that Ratcliff obtained possession of the note fraudulently and without consideration. We also find that the return of the district judge so accurately and clearly states the facts of the case and the law applicable to the facts found that we adopt it as our opinion:

[1] "The injunction was sought solely on the ground that the property under seizure and the note belonged to her, and that Nathan Ratcliff had obtained possession of the note by fraud and unlawful means and without consideration.

"On the trial, the proof failed to sustain the claims of the relatrix.

"The relatrix as a witness in her own behalf testified to no material fact in issue, but merely that the note belonged to her, she having ac-

quired it from her brother J. J. Hollingsworth, who was the maker thereof, in consideration of an indebtedness on his part to her; and she further testified that after she learned the note was in the possession of Nathan Ratcliff she informed him that the note was her property and asked that he return it to her, which request he declined.

"Another witness on the part of the relatrix was Hugh C. Fisher, a member of the Shreveport bar, who said he knew nothing whatever as to how Nathan Ratcliff acquired possession of the note.

"The testimony of Nathan Ratcliff was to the effect that he acquired this note as security to indemnify him in the event of loss by reason of his agreeing to become surety upon the appearance bonds of H. G. Burkhalter in certain criminal proceedings pending at that time against the said Burkhalter in the parishes of Caddo and Bossier; that having received the note under the impression that it was the property of the said Burkhalter he became surety upon these bonds; and the bonds having been subsequently forfeited he paid the amounts thereof which aggregated $1,850, and this amount is yet due him by the said Burkhalter.

[2] "The seizure was made by Nathan Ratcliff as if he were the owner of the notes, although it developed on the trial that he was the pledgee thereof; but this method of procedure is proper. Fidelity & Deposit Co. v. Johnston, 117 La. 880. 897, 42 So. 357; Freiler Mercantile Co. v. Chaney, 146 La. 138, 83 So. 436.

"The testimony of Nathan Ratcliff showed that he acquired this note under the circumstances above related in the month of May, 1926, prior to the maturity of the note as shown by the indorsements thereon; but no question was raised in the pleadings or on the trial as to whether or not the said Nathan Ratcliff had acquired this note after maturity, and was for that reason not a holder in due course.

"The defendants objected to evidence along lines not responsive to the pleadings. The evidence was admitted but restricted so as to not enlarge the pleadings.

[3] "The argument presented to this court in the application for the issuance of these writs, to the effect that the note in question was not negotiable by reason of the fact that it appears to have been renewed subsequent to the date of its original maturity, appears to be an idea which originated with counsel for the relatrix subsequent to the trial of the rule in the district court, because there was no pleading or argument in the district court to that effect; at all events, not having been made in the pleadings, the district court was without power to sustain that contention on the part of the relatrix even if the district judge had been of the opinion that such plea would have been well founded. See Bowers v. Riegal, 153 La. 851, 856, 96 So. 680, 681, wherein we find the following statement of the law in this connection:

" 'If the note is negotiable and has been transferred, the presumption is that the third holder acquired it before maturity, and in good faith, for value. Daniel on Negotiable Instruments (4th Ed.) § 786; Hillard v. Taylor, 114 La. 883, 38 So. 594. Therefore, under such circumstances, it must be alleged that the third person is not a holder in good faith, for value, before maturity.

" 'As plaintiffs' petition does not contain these necessary allegations, and is therefore insufficient to grant the relief prayed for, we are of the opinion that the court below was correct in maintaining the exception of no cause of action and the motion to dissolve.'

"However, if the question of whether or not Nathan Ratcliff acquired this note before maturity is a material fact in issue, the judgment should be in favor of the respondents, because the record discloses that this note was acquired by Nathan Ratcliff before maturity.

[4] "The relatrix testified that she obtained this note from her brother who was the maker thereof, and that it passed into her possession from him for the purpose of being used as collateral security.

"The relatrix testified that she used it on several occasions for such purposes, but that the purposes having been served in each instance the note was returned into her possession.

"The note having been returned to the relatrix, she had full authority to reissue the same. Levy v. Ford, 41 La. Ann. 873, 878, 6 So. 671; Herber v. Thompson, 47 La. Ann. 800, 805, 17 So. 318; Succession of Phillips, 49 La. Ann. 1019, 1020, 22 So. 202, 203. In the last-named decision this court held:

" 'The proposition that the mortgage was extinguished by the return of the note to the maker, and the mortgage could not be revived by the issue of the note, has been the subject of previous decisions of this court. When the mortgage is for a specific debt, payment extinguishes debt and mortgage, and the subsequent issue of the note will not revive the mortgage. Hill v. Hall, 4 Rob. (La.) 416; Rev. Civ. Code, art. 3285. But our jurisprudence may be deemed fixed that when a mortgage is not for a specific debt, but for future use, and hence in favor of any future holder, the use of the note as a collateral, and its return to the maker, will not cancel the mortgage in the event of the reissue of the note.'

[5] "The indorsement on the note shows that

it was made at a time when past due, to wit, March 14, 1925, when it was reissued and extended for one year from that date by the signature of J. J. Hollingsworth, its maker.

"The relatrix argues that inasmuch as this note was permitted to mature, it could not be thereafter revived so as to make it negotiable by any act on the part of the maker. Such is not the law of Louisiana.

"In Whitney National Bank v. Cannon, 52 La. Ann. 1484, 1488, 27 So. 948, 950, this court said:

" 'The learned counsel for the defendant stands upon the proposition that, after a negotiable note has matured according to its original tenor, it cannot be reinvested with the attribute of negotiability by any indorsement which may be placed on it by the maker or other person; and he relies upon certain cases decided by our predecessors in this court as supporting his position. It must be admitted that this proposition is so very difficult to reconcile with the elementary principles and definitions applicable to negotiable paper, that, in order to sustain it by adjudged cases, there ought to be practical identity between the case under consideration and those relied on. In the case before us the note lacked but one thing to bring it within the recognized and admitted rule of perfect negotiability; i. e., it was past due. And it is said that no human power could remedy that defect, and that the declaration of the maker himself, written and signed upon the note itself to the effect that it should not be considered as past due, but should be held, to all intents and purposes, not to have matured—a declaration made in his interest, and in order that others should receive the instrument as a live and unmatured security—is of no effect, and is not even binding on the man by whom it was made. Prof. Norton, in a recent work dealing with the question of negotiability, summarizes as follows: "What words will, then, be deemed by the courts to confer negotiability? 'Whether the parties to an instrument can give it a negotiable character, with all the incidents pertaining to negotiable paper, when it is not, in terms, within the class of instruments known to the law as negotiable, may be questioned,'

says Allen, J., in Evertson v. Bank, 66 N. Y. 18 [23 Am. Rep. 9]. But, however this may be with instruments intended to be otherwise than orders or promises for the payment of money alone, still it is probably the rule that, in the instruments governed by the law merchant, any words in a bill or note whence it can be inferred that the person making it intended it to be negotiable will give it a transferable quality against that person." * * *

" 'As to the note under consideration, there can be no sort of question that the language as originally used imparted negotiability, and there can be as little question that it was the intention of the maker, in writing the words, "Payment of this note extended to January 1, 1896," and signing his name, to give notice that the perfect negotiability which pertained to the instrument originally was not to be affected by the fact that the date of maturity had passed.'

"In the Whitney National Bank Case the indorsement read: 'Payment of this note extended to January 1, 1896.' It was signed by the maker. In the instant case the indorsement reads as follows: 'Mch. 14, 1925. Int. pd. on this note to date and extended for one yr. from this date.' It was signed by the maker.

"To the same effect is Paton's Digest, vol. 2, § 3539a.

"The relatrix cites Marcal v. Melliet, 18 La. Ann. 223, and Sagory v. Metropolitan Bank, 42 La. Ann. 627, 7 So. 633.

"Both of these decisions are cited in the Whitney National Bank Case, 52 La. Ann. 1490, 27 So. 948, and shown not to be authority in such a case as this.

"The other decisions cited by the relatrix, which are Hutchinson v. Rice, 105 La. 474, 29 So. 898; State v. Sutherland, 111 La. 381, 35 So. 608; Thiel v. Butker, 125 La. 474, 51 So. 500, 28 L. R. A. (N. S.) 1065; and Gajan v. Patout, 133 La. 1060, 63 So. 585, are not directed to this particular point."

For these reasons, the rule nisi issued herein is recalled and avoided, and the writs of prohibition and mandamus applied for are denied, with costs.