No. ——

First Circuit

ROVIRA v. MARTEL

(June 28, 1927.   Opinion and Decree)
(October 6, 1927.   Rehearing Refused)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Pleading—Par. 54, 60, 62.**

A plea together with answer of defendant to the right of plaintiff to sue on a past due collateral note which should have been held by plaintiff until principal obligation matured is not a plea of prematurity but in the nature of exception no right of action filed in time.

2. **Louisiana Digest—Pledges—Par. 26, 29, 32.**

In view of Civil Code Article 1901, Civil Code Article 3170, granting the right to the pledgee to collect the pledge has application to claims against third persons and does not give the pledgee the right to collect collateral note against pledgor in conflict with express agreement between pledgor and pledgee.

ON REHEARING

3. **Louisiana Digest—Pledges—Par. 26, 29, 32.**

Under Articles 3136, 3137, 3133 and 3223, of the Civil Code, a pledge follows the condition of the contract it is given to enforce, thereby making it impossible for the pledgee to recover on a past due collateral note before the maturity of the contract of pledge.

Appeal from the Parish of St. Mary. Hon. J. D. Simon, Judge.

Action by Edwin J. Rovira against J. Sully Martel.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Borah, Himel, Bloch & Borah, of Franklin, attorneys for plaintiff, appellee.

Donelson Caffery, of New Orleans, and J. Sully Martel, of Franklin, attorneys for defendant, appellant.

Leche, J., concurs for written reasons given.

Elliott, J., dissents for written reasons given.

MOUTON, J.   Defendant executed his promissory note for $600.00 in favor of plaintiff, May 5, 1926, made payable August 1st, 1926.   For the purpose of securing the payment of that note he gave plaintiff, as collateral security, a mortgage note which matured on its face on May 14, 1926.

Plaintiff brought this suit against defendant on the collateral mortgage note in June, 1926, prior to August 1st, 1926, the date fixed for the maturity of the original obligation.

In his answer defendant raised the issue of prematurity against the enforcement of the demand, which plaintiff contends he waived, claiming that this plea should have been urged in limine.   The debt which defendant obligated himself to pay was represented by the note which became due August 1st, 1926.   If the suit had been brought on that debt the question of prematurity would have been presented, and plaintiff could have been required to bring his action in due time.   C. P. 158.   This rule does not, however, apply to the suit of the plaintiff which is to enforce a collateral security with which the demand complies as to the maturity of that obligation.   The exception urged in the answer of defendant is really one of no right of action.   In support of his contention that he could bring this suit on the collateral

mortgage note prior to the maturity of the principal obligation, plaintiff relies mainly on Article 3170, Civil Code.

Article 3170 reads:

"Collection of claims pledged. If the credit which has been given in pledge becomes due before it is redeemed by the person pawning it, the creditor, by virtue of the transfer which has been made to him, shall be justified in receiving the amount, and in taking measures to recover it. When received, he must apply it to the payment of the debt due to himself, and restore the surplus, should there be any, to the person from whom he held it in pledge."

The defendant in this case gave his note to plaintiff for $600.00, and made it payable on August 1st, 1926. The date of payment was unquestionably an important consideration in the contract for defendant, the borrower, also for plaintiff, the lendor. For the borrower it is quite frequently the most important condition for the party who contracts the loan.

A written contract is presumed to express the intention of the parties, and it is the law of the case between them. Ker vs. Everhad, 4 La. Ann. 15, 6 South 566; Succession of Bellande, 42 La. Ann., 7 South. 535; C. C. 1945.

Article C. C. 1901 says: "Agreements legally entered into have the effect of laws on those who have formed them. They can not be revoked, unless by mutual consent or for causes, etc. They must be performed with good faith." Not only does the Article say that they become a law between the parties, and can not be revoked, unless by mutual consent, but that they must be performed in good faith.

In the instant case the time for the payment of the note, which was fixed for August 1st, 1926, became a law between the parties for the enforcement of the obligation. The agreement as to this time

limit could not be revoked except by the mutual consent of the parties. It could not be advanced or extended except in that way. In pledging the mortgage note there is not a single fact or circumstance to indicate that defendant had the slightest intention of changing or advancing the time of payment that had been fixed for August 1st, 1926, in the original note. Under the provisions of Article C. C. 1901, this term of payment could be changed or revoked only by the mutual consent of the parties. It is very evident that plaintiff was willing to a change in the contract which would effect an advancement in the time of payment but it is manifest that defendant never gave his consent to such a modification of the contract. Plaintiff contends that the pledging of the mortgage note gave him the right to proceed against defendant prior to the maturity of the principal note under Article 3170, Civil Code. We do not believe that the Article was ever intended to provide for a case presenting the issue involved herein. The Article says, the pledgee shall be justified in receiving the amount of the pledged security, "and in taking measures to recover it." Such measures referred to in that Article, we do not think, were ever intended to authorize the pledgee to enter suit on a collateral security for the enforcement of payment thereon in satisfaction of a debt or note of the pledgor payable at a date posterior to that of the collateral security. As to third parties, there can be no doubt, that the pledgee could sue at the maturity of the collateral security, but in such a case his demand would not come in conflict with the time of payment of the pledgor's obligation. Let us say, however, that the rule embodied in Article 3170 was intended to apply to a pledgor situated as the present defendant, as well as to third parties. The record is barren of any proof, as we have before stated, to show that the defendant

ever consented to change the date of payment of the original note. This time of payment remained the law between the parties under their contract. The mortgage note was undoubtedly handed over to plaintiff to secure the performance of the principal obligation, that is, the payment at the time stipulated. Can it be said, with any show of reason, that the simple delivery of the collateral security which was exigible at an earlier date, could confer on plaintiff the power under that Article of the Code to enforce the auxiliary obligation prior to the maturity of the principal obligation. Such a construction of the law would be investing the accessory with the virtue of modifying the principal contract it was merely intended to secure. In other words, a strained construction of Article 3170 as to pledged credits would be used to defeat a right, not only grounded in equity, but on law under the provisions of Article 1901, Civil Code.

We do not think that the provisions of Article 3170 can be invoked for the purpose stated, and that plaintiff can enforce payment on the collateral note prior to the maturity of the principal obligation.

The judgment appealed from is therefore avoided and reversed; the exception of defendant is maintained and the demand of the plaintiff is dismissed as in case of non-suit, and at his cost in both Courts.

———

LECHE, J. Concurring: Plaintiff held two notes of defendant, one as the principal note, and the other as collateral security for the payment of the principal note. Both notes are subscribed by defendant to his own order and are by him endorsed in blank. The principal note was only due August 1, 1926, while the collateral note became due May 14, 1926.

Plaintiff instituted suit against defendant on the collateral note, on June 12, 1926, alleging himself to be the holder and owner of the same. Afterwards plaintiff instituted another suit on another collateral note. The two suits were decided adversely to defendant and he has appealed. The notes sued on are not in the records of the two cases but such are the facts as we can gather them from the pleadings and briefs of the parties. The two cases were consolidated for argument in this Court, and were submitted at the same time.

The facts as above stated appear to be undisputed, and it seems to be conceded that the sole question involved, and to be decided by this Court, is whether a creditor who holds two notes of his debtor, the one as principal, due at a fixed date, and the other as collateral, due at an earlier date, may enforce payment by suit, of the collateral note before the principal note becomes due.

Plaintiff's contention is that defendant could only have advanced that defense by a plea of prematurity, which must be filed in limine, and that it was too late when in his answer to the merits in the suit on the collateral note, defendant first pleaded that plaintiff was violating his promise and obligation evidenced by the principal note, wherein payment of the debt was only to be demanded and enforced on August 1, 1926.

The exception of prematurity is dilatory in its nature. Article 332 C. P. defines dilatory exceptions to be such as do not tend to defeat the action, but only to retard its progress. It is not disputed that dilatory exceptions must be filed in limine. C. P. Article 333. Nor is there any doubt that defendant in this case, failed to file such exception in limine. But is the defense offered in defendant's answer, a plea

of prematurity? Is the plea pregnant with the admission that it does not tend to defeat the action? Plaintiff in acquiring the principal note, agreed that he would not demand or enforce payment thereof until August 1, 1926, and in accepting the collateral note also made and subscribed by defendant, was bound to know that he had no right to compel defendant to pay the claim represented by the principal note before August 1, 1926. When defendant gave him the collateral note as security, it is apparent that it was not for the purpose of hastening the payment of the principal obligation, but to additionally secure its payment. Both notes were secured by mortgage, but on different properties, and plaintiff by accepting the collateral note, was given additional security for the payment of his claim in the shape of another mortgage on other property, and that was the purpose of the pledge of the collateral note. The giving of the collateral note in pledge had the effect of securing the payment of the principal note by another and additional mortgage, but it did not add another or change the original debtor, nor change the maturity of the principal obligation.

Reverting now to the question whether the plea filed by defendant tended to defeat the first action on the collateral note, it is evident that it did, and that it goes to the very foundation of the suit, and is not a plea of prematurity but a plea of estoppel or no right of action, which may be filed at any time, and which is preferably tried with the merits. The plea required the taking of evidence and such pleas should be referred to the merits. Succession of Francis, 49 La. Ann. 1740, 22 South. 943; Harvin vs. Blackman, 108 La. 427, 32 South. 452; Dalton vs. Wickliff, 35 La. Ann. 356, 35 South. 355. The trial judge therefore properly permitted the introduction of evidence to sustain this defense.

By Article 3167 of the Civil Code, the pledgee is bound to take the same care of the pledge as if it were his own property, and he is responsible for the loss of the pledge, which may happen through his fault. Where the pledge consists of a credit and that credit becomes due before the pledge is redeemed, Article 3170 says the pledgee shall be justified in receiving the amount and in taking measures to recover it. When received, he must apply it to the payment of the debt due to himself, and restore the surplus, should there be any, to the person from whom he held it in pledge.

The language used by the lawmaker in framing these Articles, clearly indicates that the credit mentioned is a claim against some person other than the pledgor, otherwise the last quoted article would be meaningless.

The jurisprudence of this State abounds with decisions holding that the pledgee may sue as owner upon the credit which he holds in pledge, but neither the Code nor the jurisprudence make it obligatory upon the pledgee to do so. Plaintiff was not obliged to sue upon the collateral note, and when he did sue thereon nearly two months before the maturity of the principal note, he violated the agreement evidenced by the terms of the principal note whereby defendant had the right to retain the amount called for therein, until August 1, 1926, when it became due.

The defense tendered by defendant should have been sustained and plaintiff's suit on the collateral note No. 16,381 of the dockets of the District Court, should have been dismissed without prejudice as in case of non-suit.

For these reasons, I hereby concur.

### DISSENTING OPINION OF ELLIOTT, J.

"Every negotiable instrument is payable at the time fixed therein, without grace." Act 64 of 1904, Section 85 (Amd. 89 of 1926). Therefore, while it was not obligatory on the part of the plaintiff, as pledgee, under the law Civil Code Article 3170, to sue on the note received from the defendant as collateral security at its maturity, he had a legal right to do so. And if there had been loss due to his failure to do so in this case, the pledgor would have expected him to make good the loss.

A similar contention was considered and decided in Fidelity & Deposit Co. vs. Johnson, 117 La. 880, 42 South. 357. Clause 10 of the syllabus disposes of it as follows:

"In a suit the demand not being founded on the principal obligation; but on the pledged collateral, the fact that the principal obligation is immature or contingent is immaterial."

The pledgor's conclusion in this case that the pledgee, by accepting a collateral, which matured before the principal obligation did, tacitly postponed the maturity of the collateral to meet the maturity of the principal note, can not take away rights conferred by the law, when there was no agreement to wait and there was none. As there was no agreement to wait, there was none violated.

It is, therefore, error in my opinion to dismiss plaintiff's suit on the collateral; but defendant should be protected by reservations in the judgment rendered thereon.

———

### ON APPLICATION FOR REHEARING

MOUTON, J. Defendant executed his note in favor of plaintiff for $600.00, dated April 15th, 1926, payable on or before August 1st, 1926. To secure the payment of that note he delivered to plaintiff his collateral mortgage note dated May 14, 1925, due May 14, 1926.

Plaintiff sued defendant on the collateral security prior to the maturity of the principal or original obligation. Defendant, in his answer, contends that plaintiff could not sue on the collateral before the first note had matured. We held, in the original opinion, that this defense raised the issue as to the right of action of plaintiff to sue, and was not a plea of prematurity.

When defendant executed his original note, the right of action of the plaintiff sprung immediately into existence, but the right to sue thereon was suspended until August 1st, 1926, when that note matured. If the suit had been brought on that note, which was the principal obligation of the defendant, an exception that it was instituted before the debt became due, would have been one of prematurity, entailing its dismissal under the provisions of Article 158 C. P. The suit was not brought on the principal obligation, but was instituted on the mortgage note for the payment of the collateral mortgage, but prior to the maturity of the principal obligation. Obviously this collateral mortgage was given by defendant as an auxiliary obligation for the enforcement of the principal obligation. C. C. 3136. It could not have the effect of changing the conditions of the main obligation. On the contrary, it must be held that it followed or conformed to those conditions. C. C. 3137. Such being the legal situation, the right to sue on the collateral could spring into existence only when the original became due. As it could not arise until then, the suit on the collateral having been instituted prior thereto, at that time plaintiff had no right of action at all on the collateral security. Evidently as the collateral was due when suit was instituted no exception of prematurity could be filed against it. It is, therefore, apparent that the exception of defendant urged in his answer, was to the effect that plaintiff had no right of action whatsoever to en-

force collection on the collateral, independently of a demand on the original note. It seems to us that it is inconceivable that defendant in giving plaintiff the collateral mortgage in pledge intended to change the date of payment of the original note, thus to allow plaintiff to sue on the collateral at its maturity, and if the proceeds realized were insufficient, to again permit plaintiff to sue on the original note for the payment of whatever balance might remain due thereunder.

In his brief accompanying his application for a rehearing, plaintiff says, and correctly, that: "A written contract is presumed to express the intention of the parties, and it is the law of the case between the parties;" "that the intention is to be determined by the words of the contract when these are clear and explicit." Further, counsel says: "When the intent of the parties is evident and lawful, neither equity nor usage can be resorted to, in order to enlarge or restrain that intent, nor can any law operate to that effect, unless it be some prohibition or other provision which the parties had no right to modify or renounce." No one will dispute the correctness of the foregoing propositions of law stated by counsel for plaintiff. Let us apply those principles to the case at bar. In the original note, which formed the contract between the parties defendant obligated himself to pay to plaintiff $600.00 on August 1st, 1926. This agreement embodied the obligation on the part of defendant, to pay said amount to plaintiff, but at the maturity of the note. The words of the contract are clear and explicit, and the agreement made the payment legally exigible at the time stipulated, and became the law between the parties.

C. C. Article 1901 says: "Agreements legally entered into have the effect of laws on those who have formed them. They can not be revoked unless by mutual consent of the parties, or for causes acknowledged by law. They must be performed in good faith." It is not disputed that the agreement which is evidenced by the note was lawfully entered into, and had the effect of a law between plaintiff and defendant. Under the provisions of that Article of the Code, it is indisputable that the agreement as to the date or time stipulated on the note for its payment could not be changed or revoked, except by the "mutual consent" of the parties thereto. It was clearly the intention of the parties that the note was to be paid at the time fixed for its maturity, when it would become exigible. There is nothing in our original opinion to suggest in the least that we attempted to resort to usage or equity for the purpose of restraining or enlarging the intent of the parties expressed in the note, as seems to be indicated by counsel in his brief for a rehearing. We grounded ourselves in that opinion on the provisions of Article 1901 of the Civil Code, which pointedly declares that agreements legally entered into, as this one was, constitute the law between the parties, cannot be revoked except by their "mutual consent" and must be performed in good faith. The collateral mortgage note was given in pledge to plaintiff. C. C. Article 3136 reads as follows: "Every lawful obligation may be enforced by the auxiliary obligation of pledge." Article 3137 reads: "If the principal condition be conditional, that of the pledge is conformed or extinguished with it." It seems clear that the pledge follows the conditions of the contract it is given to enforce, and as said in Article 3133, it is a contract by which a debtor gives something to his creditor as a security for his debt. It appears quite clear to us that defendant gave the collateral mortgage note as an auxiliary obligation, to secure the debt, and to enforce the original note or principal obligation, as provided for in

Articles C. C. 3136, 3223. If it was delivered to plaintiff as an auxiliary to enforce the main note, as it doubtless was, it is manifest that defendant had no intention when the collateral was so pledged, to change or revoke the date, that is August 1st, 1926, at which time the original note matured according to its clear •and explicit terms. It is not believable that when he pledged this collateral he intended to confer on plaintiff the right to sue thereon for a collection of his original debt prior to its maturity. It may be that it was acceptable to plaintiff to advance the collection on the collateral security, but the transaction repels the idea that by "mutual consent" defendant had the least desire to give the authority to plaintiff to sue on the collateral for the collection of his debt, prior to the maturity of the original note. As it is evident that defendant never intended to change the date of the payment of his debt as originally fixed, plaintiff had no right to sue on the collateral security before the maturity of the note the auxiliary obligation was given to enforce. To hold that he could, would be in violation of the plain provision of Article C. C. 1901, which in its concluding part says, that agreements between parties which is a law unto them, "must be performed in good faith".

Counsel refers us confidently to Hollingsworth vs. Ratcliff, 162 La. 281; 110 South. 422, in contending that if defendant intended, when he delivered the collateral to make its terms of payment conform to the date of payment of the original note, that in endorsing it, he should have extended the payment thereof to August 1st, 1926, the term of maturity of the original note. In the case cited, the Court said that the extended payment entered on the note by the maker had the effect of preserving its negotiability, although the date of its maturity had passed. When defendant delivered the collateral, there is no proof to show that it was past due, and had to be endorsed to preserve its negotiability, and which defendant was not called upon to do in order to preserve the negotiability of the note as against himself. The principle announced in the case above cited does not apply to this case.

The term of payment in the original note was fixed by virtue of a contract which is founded on a natural right, and which is recognized by positive law under the provisions of Article 1901 Civil Code. The right given the pledgee creditor to sue on a collateral security is the result of an arbitrary enactment. If there arises any conflict on the application of these two Articles of the Civil Code in determining the rights of the parties in a case of this character, it seems to us the provisions of Article 3170, giving to the creditor the right to sue on the pledged note should yield to Article 1901, which is founded on equity and justice. As we have, however, stated originally, we are of the opinion, that the right to proceed on a collateral by the pledgee applies to cases where third parties are affected, but not to a case like the one at bar, where the debtor has given to his creditor a collateral in pledge to secure his debt, which is an auxiliary to enforce the main obligation.

For the foregoing reasons the rehearing is refused.