McCALEB, Justice
(dissenting).
Albeit the $9,000 indebtedness of Ezell to-Southern Pipe (secured by the mortgage and mortgage note dated October 5, 1962) was given for a specific debt, this mortgage note was not extinguished by payment of that debt for the reason that it was also held in pledge to secure any indebtedness of Ezell to Southern Pipe under the-Collateral Pledge Agreement of April 3,. 1962 that may have existed (and did actually exist) at the time the payment of the $9,000 advance was credited to Ezell’s running account. Indeed, the Collateral Pledge Agreement of April 3, 1962 clearly provides that all future security given by Ezell to-Southern Pipe for his indebtedness, which *380 was not to exceed $30,000, would remain thus pledged.
The agreement reads:
“Whereas, the undersigned is presently indebted unto the Southern Pipe & Supply Co., Meridian, Mississippi, for loans and advances made and credit extended and desires to carry on a general business with that company, in the course of which the undersigned may from time to time apply for additional loans and advances, renewals thereof and the further extension of credit; therefore, in ■order to secure the payment of all such indebtedness within the limitation of amount hereinafter fixed, whether presently existing or hereafter incurred, whether directly or indirectly, and whether primarily or secondarily, and whether represented by notes, drafts, bills, overdraft, or otherwise, any and all renewals •or extensions thereof, together with interest thereon and all costs of collection including attorney’s fees the undersigned •does by these presents pledge and hypothecate unto the Southern Pipe and Supply Co. the securities hereinafter described.
“ .-i: * *
“ * * * it shall be conclusively presumed that any and all loans and advances hereafter made to the undersigned by said Company shall have been made in ■accordance with and upon the security provided for in this agreement which shall remain in force and effect so long as the undersigned is indebted unto the Southern Pipe and Supply Co. and it is expressly understood that the possession of the Southern Pipe and Supply Co. of any security or property of the undersigned of any character whatever shall conclusively evidence the fact that such property has been delivered in accordance with this agreement whether or not the same may be specifically described as contemplated herein.” (Emphasis mine)
This agreement exhibits in precise and unmistakable terms the intent of the parties that all securities given by Ezell subsequent to April 3, 1962 shall remain pledged to Southern Pipe, and that possession by the latter of any security or property of Ezell shall conclusively evidence the fact that it has been delivered * * * in accordance with this agreement whether or not the same may be specifically described as contemplated herein.
The rationale of the majority opinion appears to rest on a dual basis. First, it is said that the collateral agreement of April 3, 1962 * * * could not change the legal effect anent the mortgage when the direct and specific debt evidence by the note was paid. Secondly, it is declared that, even if the parties intended otherwise —that is, that the note and mortgage was to remain extant after its payment to be held as collateral for other obligations of Ezell to Southern Pipe — the agreement *382 would be unenforceable since * * * such intention could not alter the express legal authority to the contrary.
Both of these deductions are unsound in my opinion. For a casual perusal of the above quoted provisions of the Collateral Pledge Agreement shows that the parties, by express language, agreed that any securities given- in the future by Ezell to Southern Pipe would be pledged for the payment of any indebtedness, present or future, due by Ezell. Thus, when the $9,000 mortgage was given, the subsequent payment of the mortgage note did not and could not extinguish the mortgage because the note was pledged from the date of its issuance to secure the payment of Ezell’s indebtedness under the prior Collateral Pledge Agreement.
To say in these circumstances that the prior collateral agreement could not change the legal effect of the subsequent mortgage debt is not in keeping either with the law or the jurisprudence construing it. On the contrary, the collateral pledge and mortgage agreement of April 3, 1962 was specifically authorized by Civil Code, Article 3158, which provides not only that a pledge of collateral may be made to secure future advances to the debtor up to a certain amount, but also that “ * * * the instrument or item may remain in pledge to the pledgee or, without withdrawal from the hands of the pledgee, be repledged to the pledgee to secure at any time any renewal or renewals of the original loan or any part thereof or any new or additional Sloans, even though the original loan has been reduced or paid, up to the total limit which it zms agreed should be secured by the pledge, and, * * * to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, without any added notification or other formality, and the pledge shall be valid as well against third persons as against the pledger thereof, if made in good faith; * * (Emphasis mine)
Nor do I perceive how the majority obtains any comfort out of the jurisprudence, particularly Hollingsworth v. Ratcliff, 162 La. 281, 110 So. 422; Citizens’ National Bank of Hammond v. Loranger, 163 La. 868, 113 So. 129; and Lampton Reid & Co. v. Fortenberry (La.App.), 168 So. 36. In reality, the conclusion that the mortgage note in question was given herein for a specific debt only must necessarily ignore, as it does, the provisions of the Collateral Pledge Agreement quoted above.
The additional holding of the majority that the result in the case would be the same, even if the parties intended that the note and mortgage could be held as collateral for other obligations following payment of the $9,000 indebtedness, constitutes, in truth, a refusal to enforce the agreement made by the parties. Of course, there is no need for the Court to assume that the parties intended that the $9,000-mortgage note was actually pledged as *384 collateral because, as I have already shown, the collateral agreement itself clearly specifies that such is the case. Hence, since the agreement thus provides, it is to be wondered why the expressed intent of the parties cannot be accorded efficacy by the j udiciary. I am not aware of any legal barrier which renders such an agreement unenforceable in our courts. Article 3292 of the Civil Code provides that a mortgage may be given for an obligation “which has not yet risen into existence.” And Article 3158 authorizes, as stated above, a pledge of collateral to secure advances to be made in the future to the pledger up to a certain amount.
It is my understanding of the law that parties may make any contract that they desire, provided it is not forbidden by statute or otherwise contrary to public policy. Article 1945 of the Civil Code enunciates this fundamental principle in stating “Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them.” So, in the case at bar, where the intent of the parties is clear, it is pertinent to ask why cannot this contract made in good faith by the parties thereto be enforced as written? The answer is obvious; it is found in the mandate contained in the second paragraph of Civil Code, Article 1945, which declares “That courts are bound to give legal effect to all such contracts according to the true intent of all the parties;”.
I respectfully dissent.