AYRES, Judge.
In contest on this appeal is the ownership as pledgee of a described mortgage note executed and signed by the late Thomas A. Bridges. The contestants now before the court are Mrs. Alice Bell Mc-Crary, administratrix of the estate and succession of the original plaintiff, the late J. Hoyte McCrary, and the Farmers State Bank of Center, Texas. Each claims to be the owner as pledgee of the note allegedly pledged to secure loans made to Bridges.
This action was instituted by J. Hoyte McCrary, who sought judgment against the unopened succession of Bridges for *423 $14,640.55, with 8% per annum interest thereon from June 16, 1969, until paid, together with 10% additional on principal and interest as attorney’s fees. McCrary, in addition, sought to have recognized his ownership as pledgee of Bridges’ aforesaid mortgage note.
In answer to plaintiff’s demands, defendant, Farmers State Bank, asserted its possession and pledge of the mortgage note by virtue of its delivery by Bridges to secure an indebtedness represented by a note of Bridges executed simultaneously with the act of pledge.
After trial, plaintiff was awarded judgment against Bridges’ succession for the amount prayed for, but the court found that the Farmers State Bank was the owner, as pledgee, of the mortgage note and rejected plaintiff’s demands with respect thereto. From this judgment, plaintiff prosecutes this devolutive appeal.
This court is, as was the trial court, deprived of the benefit of the testimony of the two parties most knowledgeable of the facts herein involved. Bridges predeceased the institution of this action. McCrary died after its institution but prior to trial. Our findings of fact, as were the conclusions of the trial court, must necessarily be predicated upon documentary evidence and such events as may be gleaned from the testimony of witnesses obviously not as fully informed as were the principals to the transaction with which this action is concerned.
Certain definite facts are, however, clearly established. In April, 1967, Bridges borrowed from McCrary the sum of $16,000.00. A bank money order for this amount was issued by the Shreveport Bank & Trust Company on April 19, 1967, with McCrary as the remitter and Bridges as the payee. One of McCrary’s accounts was debited by the bank with the $16,000.00. On the debit slip issued by the bank to McCrary, it was noted: “B.M.O. [bank money order] to T. A. Bridges for R/E [real estate] Mtge note dated 4-19-67 in the amount of $16,000.00 @ 7%.”
These documents were identified by Mrs. Betty Rich, a note teller at the bank where the transaction occurred. The mortgage note signed by Bridges, payable to “FUTURE HOLDER” and paraphed by a notary public to identify it with an act of mortgage of even date, produced in court by counsel for defendant, Farmers State Bank, was filed in evidence by plaintiff’s counsel. This mortgage .note, according to Mrs. Rich’s testimony, was placed in an envelope, or jacket, and delivered to her at the Shreveport bank where it was kept for McCrary in the bank’s files for collection purposes. Various payments made by Bridges were noted on the jacket, and the collections were deposited to one of Mc-Crary’s accounts. The balance of the indebtedness on May 9, 1969, was $14,640.55, the principal of the indebtedness for which judgment was sought in this action. No further payments were made.
McCrary and Bridges, according to Mrs. Rich’s testimony, came to the bank on June 16, 1969, and asked for the jacket containing the mortgage note. Upon delivery of this envelope and its contents to McCrary, McCrary and Bridges moved some five or six feet away, but in full view of Mrs. Rich, opened the jacket and spread the contents thereof before them. Soon thereafter they stepped forward and requested Mrs. Rich to prepare another “hand” note in the sum of $14,640.55, payable on demand to the order of J. Hoyte McCrary. Mrs. Rich followed the instructions and prepared the note on which was inscribed:
“. . . having attached hereto as collateral security for the payment of this and every other indebtedness and liability of mine to the holder, due or to become due or that may hereafter be contracted up to the sum of One Million Dollars, the following:
“Real Estate Note dated April 19, 1967 in the amount of $16,000.00 and Mort *424 gage secured by House & lot located at 620 W. 70th Street, Shreveport, Louisiana.
“Note extended to 6-16-1970.”
The note was signed by Bridges and the jacket and contents were thereupon returned to Mrs. Rich who, however, did not check the contents.
Following Bridges’ death, McCrary returned to the bank and requested the jacket containing the documents evidencing the aforesaid transaction with Bridges. Within minutes thereafter, he returned to Mrs. Rich and reported he was unable to locate the mortgage note pledged to secure Bridges’ indebtedness. Mrs. Rich testified that McCrary appeared to have been “very agitated, worried.” That he was worried and distressed by the loss of the note was confirmed by the testimony of his wife. A diligent search at the bank failed to disclose its whereabouts.
Luke (Jack) Motley, Jr., president of the defendant, Farmers State Bank, testified his bank had done business with Bridges for some eight or ten years prior to September S, 1969, at which time his indebtedness to the bank exceeded $100,000.00. On that occasion, Bridges sought an additional loan of $20,000.00 from Motley’s bank. This loan was granted. As security, Bridges pledged and deposited with the bank the $16,000.00 mortgage note which Bridges then had in his possession as well as a second mortgage note of $12,640.00, executed by Bridges on February 19, 1969, and payable to “FUTURE HOLDER.” Bridges, on that occasion, also delivered to the bank a title opinion covering the property mortgaged, and a mortgage certificate dated July 7, 1969.
It is made clear by the testimony of Motley that neither he nor the bank had any information, knowledge, or suspicion there were adverse claimants to the Bridges mortgage note.
Hal V. Lyons, Esq., testified by deposition that he had represented Bridges as his attorney since 1964; that he had prepared the mortgage note concerned herein and, at the time he prepared his title opinion, February 20, 1969, the mortgage note was in his office. According to Lyons’ testimony, Bridges brought the note to Lyons’ office and, after preparation of his opinion, he delivered the opinion and returned the note to Bridges. Bridges made no comment to Lyons as to how he came into possession of the note, and Lyons did not inquire.
Gordon H. Lambert testified he and McCrary had some business relations with Bridges in connection with which they learned , of Bridges’ precarious financial situation. Bridges was unable to make payment of either principal or interest on a $17,000.00 indebtedness due another bank. Being obligated with Bridges for the payment of this indebtedness, he and McCrary became much concerned. Therefore, as of June, 1969, Lambert and McCrary, according to the former’s testimony, had knowledge of Bridges’ inability to meet his obligations. .
William Peterson, a CPA employed by McCrary’s estate, testified, after having examined McCrary’s records, that he found no evidence of payments attributable to McCrary from Bridges after June 16, 1969. The purpose intended by this testimony was to show that the loan was not paid off and there was no reason why McCrary should have returned the security to Bridges.
There is no testimony as to how, when, or through what means the mortgage note left the possession of the Shreveport Bank & Trust Company, which possessed the note as McCrary’s agent. The mystery is heightened by the testimony of Lyons that the note was in his possession when he prepared a title opinion on the property mortgaged during February, 1969. How the note first left the bank’s possession and came into the possession of Bridges, who delivered and pledged it to the Farmers State Bank, are unsolved mysteries.
*425 From the facts detailed in the above recital, we are convinced that the Shreveport Bank & Trust Company, as McCrary’s agent, did have possession of the mortgage note on one or more occasions, and that the note was taken from its files. As noted already, the evidence does not establish how, when, or by what means the taking was effected. A conclusion that the taking was wrongful would, under the established facts, necessarily have to be based on mere speculation or conjecture. However, whether the note was extracted from the files of the local bank rightfully or wrongfully is, under the circumstances of this case, unimportant and immaterial, for, even under the Negotiable Instruments Law, LSA-R.S. 7:1 et seq., the circumstance that a negotiable instrument was stolen is no defense against a bona fide holder for value. Consolidated Association of Planters of Louisiana v. Avegno, 28 La.Ann. 552 (1876); Tyler v. Whitney-Central Trust & Savings Bank, 157 La. 249, 102 So. 325 (1924); Rex Finance Company v. Cary, 145 So.2d 672 (La.App., 4th Cir. 1962); aff. 244 La. 675, 154 So.2d 360 (1963).
Observations as to the right of one acquiring a negotiable instrument from one having possession were made by the Supreme Court in Theard v. Gueringer, 115 La. 242, 38 So. 979, 980-981 (1905), wherein it was said:
“A person holding in his possession and under his control, before maturity, a promissory note made to the order of the maker, and indorsed by her, may be presumed, as between that person and the public, the owner of the same, or as agent with full power to dispose of it. If the party owning the note has intrusted it to an agent, he has created a trust by means of which fraud could be perpetrated. By placing the note in his hands, he has held out to the world that they could trust him, and thrown upon himself the burden of loss when they have acted on that inducement.
“The mere possession of a negotiable note payable to the order of the payee, and indorsed by him in blank, or of a negotiable note payable to bearer, is in itself sufficient evidence of his right to present it, and to demand payment of it. The payment to such person will always be valid unless he is known to have acquired possession wrongfully. Vol. 1, Daniel’s Negotiable Instruments (4th Ed.) §§ 573, 843, 844; Russell v. Longstaffe, 2 Douglass, 514; Bank v. Neal, 22 How. 107, 16 L.Ed. 323; Davidson v. Lanier, 4 Wall. 457, 18 L.Ed. 377; Angle v. North-Western Mut. Life Insurance Co., 92 U.S. 330, 23 L.Ed. 556; Civ.Code La. art. 2145(1).
“The same rule applies to a transfer as well as to a payment of the note.”
Plaintiff nevertheless contends defendant bank is not a holder of the note in due course inasmuch as the bank acquired the note after maturity. The note, dated as aforesaid, on April 19, 1967, was payable on or before one (1) year from date. However, before accepting the note an extension agreement was entered into in writing by Bridges and Motley, representing his bank, extending the due date and fixing it as of March 5,1970.
Plaintiff’s contention is without merit. In Singer v. Kohlman, 170 La. 598, 128 So. 528, 529 (1930), the Supreme Court pointed out that “an indorsement of a note, after maturity, extending the date of payment revives it so as to make it negotiable as respects one taking it before the maturity so extended.” Cited in support of this proposition were: Hollingsworth v. Ratcliff, 162 La. 281, 110 So. 422 (1926) ; Whitney Nat. Bank v. Cannon, 52 La.Ann. 1484, 27 So. 948 (1900).
Obiter dictum to the contrary of this rule was noted in Marcal v. Melliet, 18 La.Ann. 223 (1866); Metropolitan Bank v. Bouny, 42 La.Ann. 439, 7 So. 586 (1890); Sagory v. Metropolitan Bank, 42 La.Ann. 627, 7 So. 633 (1890).
*426 For the aforesaid reasons, we are of the opinion that the defendant, Farmers State Bank, is the holder of the note in due course, in good faith, before maturity, and for a valid consideration, and, as such, is entitled to possession and ownership of the note as pledgee.
The judgment appealed is accordingly affirmed at plaintiff-appellant’s costs.
Affirmed.